Marvin MILLER, Covina Publishing, Inc., a corporation doing business as Collector's Publications, Appellants,

v.

UNITED STATES of America, Appellee.

No. 23935.

United States Court of Appeals, Ninth Circuit.

Sept. 16, 1970.

Rehearing Denied Oct. 26, 1970.

Burton Marks (argued), of Marks, Sherman & London, Los Angeles, Cal., for appellants.

Edward J. Wallin (argued), Ass't. U. S. Atty., Wm. Matthew Byrne, U. S. Atty., Robert L. Brosio, Chief, Criminal Division, Los Angeles, Cal., for appellee.

Before BARNES, KILKENNY and TRASK, Circuit Judges.

TRASK, Circuit Judge:

Marvin Miller and Covina Publishing, Inc., a corporation controlled by Miller and doing business as Collector's Publications, bring this appeal from their convictions at jury trial for having mailed obscene matter in violation of 18 U.S.C. § 1461 and for having transported obscene matter in interstate commerce in violation of 18 U.S.C. § 1462.

A grand jury indicted appellants on twenty-one counts of violating sections 1461 and 1462. The trial court granted a judgment of acquittal on one count. The jury returned verdicts of guilty on eight counts and not guilty on the remaining twelve counts. The jury specifically found appellants guilty of mailing and transporting two obscene books, "Restless Love" and "Misfortunes of Mary", one obscene magazine, "The Name Is Bonnie", and of mailing obscene advertisements for these and other publications. We affirm.

(1) *Constitutionality of 18 U.S.C. §§ 1461 and 1462*

■ Appellants challenge the constitutionality of the statutes under which they were convicted on the ground that the words, obscene, lewd, filthy, indecent and vile, employed in one or both of the statutes are vague and imprecise.

The Supreme Court upheld the constitutionality of section 1461 in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The Court stated:

"Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '* * * [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *.' United States v. Petrillo, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 91 L.Ed.

1877." 354 U.S. at 491, 77 S.Ct. at 1312 (footnote omitted).

Section 1462 has also been held constitutional. See, e. g., Reed Enterprises v. Clark, 278 F.Supp. 372, 380–381 (D.D. C. 1967), aff'd (per curiam) 390 U.S. 457, 88 S.Ct. 1196, 20 L.Ed.2d 28 (1968); United States v. Fragus, 422 F.2d 1244 (5th Cir. 1970); United States v. Melvin, 419 F.2d 136, 139 (4th Cir. 1969).

Nor does the decision of the Supreme Court in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), require a different decision in this case. *Stanley* recognized that the First Amendment protected private possession of materials charged as being obscene. The Court in *Stanley*, however, as has frequently been pointed out, does not overrule or impair the validity of *Roth, supra.*

"We hold that the First and the Fourteenth Amendments prohibit making mere private possession of obscene material a crime. *Roth* and the cases following that decision are not impaired by today's holding." 394 U. S. at 568, 89 S.Ct. at 1249.[1]

■ *Stanley*, on its facts, reversed a state conviction of the defendant for possessing an obscene film in his own home. Notwithstanding the flat pronouncement that *Roth* and the cases following it are not impaired by *Stanley*, questions have been raised as to its scope. See Karalexis v. Byrne, 306 F. Supp. 1363, 1366 (D.Mass. 1969). The case before us now is not a private possession case as was *Stanley* or as is United States v. Thirty-Seven (37) Photographs, 309 F.Supp. 36 (C.D.Cal. 1970). As is pointed out hereafter, this is the commercial exploitation of obscenity by large scale advertising openly appealing by textual and graphic materials to the prurient interest of any person who might be one of the several million on an apparently unselective mailing list. As such this case is not only within the teachings of *Roth*, but also within the plain meaning of *Ginzburg*. There appeared to be little but lip service to any concern for juveniles and there was ample evidence of unwelcome "assault upon individual privacy." See Redrup v. New York, 386 U.S. 767, 769, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967).

### (2) *Prior Restraint*

Appellants next argue that their indictment, arrest and search and seizure constituted an unconstitutional prior restraint on their First Amendment rights in that a seizure of allegedly obscene publications is prohibited without a prior adversary proceeding on the issue of obscenity.

We need not reach this question because the materials seized from appellant Miller at the time of his arrest were not among those found by the jury to be obscene. Appellants were in no way prejudiced by the search and seizure.

■ We find no constitutional or other infirmities in the indictment or arrest, made with a warrant. Appellants assert that the entire procedure violated the rule against seizures prior to a determination of obscenity announced in a Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), but we agree with the Second Circuit that this case should not be read "to proscribe the application of the ordinary methods of initiating criminal prosecution to obscenity cases." United States v. Wild, 422 F.2d 34, 38 (2d Cir. 1969), reh. denied, 422 F.2d 38 (2d Cir. 1970).[2]

---

1. Nor did the *Stanley* court overrule or criticize its prior decisions involving prosecutions for sale or distribution of obscene materials such as Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966), and Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966). See Stanley v. Georgia, 394 U.S. 557, 561 n. 6, 89 S.Ct. 1243, 22 L.Ed.2d 542.

2. We note that even if appellants had been convicted of mailing or transporting the seized publications, it is doubtful that they would be entitled to suppression. Both the Supreme Court and this circuit have held that adversary pro-

### (3) *Whether "The Name Is Bonnie" is obscene*

Appellants do not challenge the jury's implied finding of obscenity of the books, "Restless Love" and "Misfortunes of Mary," but contend that the magazine, "The Name Is Bonnie," is not obscene as a matter of law.

■ "The Name Is Bonnie" is a forty-eight page publication containing forty-five pages of nude photographs of the same female model, twenty-four in color. It sold for ten dollars. The government's brief accurately described it as follows:

> "Each picture is taken on a bed or on the floor next to a bed. The camera is always focused on the model's vulva. There is an obvious effort to reveal as much as possible of the vulva, perineal and anal area by means of contrived and awkward legs apart poses. In many photographs, the model uses her arms to brace her legs as wide apart as possible. The model's sex organs are framed in nearly all the poses by a garter belt, nylon stockings and white knee-length boots or high heel shoes."

Nudes are frequently the subjects of sculpture, painting and sketching and under the hand of the artist are, indeed, works of art. Nudes are frequently photographed and again become, with the skill of the artist, works of art. They can also be obscene, lewd, lascivious, indecent, filthy and vile. These are the latter. They are everything which the government describes them to be in its brief. They are also suggestive, deliberately posed to appeal to the prurient interest in sex, patently offensive to contemporary national community standards relating to the description or portrayal of sexual matters and are utterly without redeeming social value. They carry no message other than to appeal to a shameful and morbid interest in nudity and sex. There is no text. No text could help. It is the duty of this court to make an independent constitutional judgment as to whether the magazine is constitutionally protected. See Jacobellis v. Ohio, 378 U.S. 184, 190, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964).

We are mindful of the fact that magazines depicting nudes are not obscene *per se*. Luros v. United States, 389 F.2d 200, 203 (8th Cir. 1968). The magazine under consideration here, however, depicts and emphasizes the female sex organs without any restriction. There is no attempt at artistic composition either in background, surroundings or poses. The magazine appears to be virtually indistinguishable from the description of those publications held obscene in United States v. 77 Cartons of Magazines, 300 F.Supp. 851 (N.D. Cal. 1969).

On the basis of the test established in a book named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), we hold that the publication "The Name Is Bonnie" is constitutionally obscene.

■ Our conclusion that the magazine is obscene is bolstered by the fact that it was advertised entirely on the basis of its appeal to prurient interest.

---

cedures which focus on the question of obscenity must precede seizure to avoid suppression of constitutionally-protected publications or the interruption of their dissemination. A Quantity of Books v. Kansas, *supra*; Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L. Ed.2d 1127 (1961); Demich, Inc. v. Ferdon, 426 F.2d 643 (9th Cir. 1970). each of these cases, however, involved a "massive" seizure, either in terms of quantity or disseminative power, and constituted a first step in proceedings against the disseminator. Here, the seizure from appellant Miller's briefcase of one book and pages from another book followed an indictment and was incident to a lawful arrest. *Compare* Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 929, 25 L. Ed.2d 101 (1970), *with* United States v. Wild, *supra*.

The book of photographs "The Name Is Bonnie" was obtained through the mails in response to a written request and a money order. (R.T. 258).

See Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966); United States v. Baranov, 418 F.2d 1051, 1053 (9th Cir. 1969). Advertisements featured thirteen sample photographs of the nude model. Several of the photographs omitted the model's head and upper part of her body, focusing only on her sex organs. The evidence established that approximately 300,000 envelopes containing three or four brochures for sex-oriented material had been prepared for defendants by a mailer (R.T. 718–724). Defendant Miller testifying on his own behalf and on behalf of the defendant corporation did not deny that he and his company had published the books and materials named in the indictment. He testified that his original mailing list of from 100,000 to 150,000 names had several million names added later (R.T. 1216–1217). Although Miller testified he did not send mailings of sex-oriented materials to juveniles or persons who did not want them (R.T. 1218), the exhibits show mailings were received through the mails addressed to "Occupant" of a particular address (Ex. 45) and to "Palo Verde High Bookstore" at a particular address.[3] (Ex. 32.) There was evidence that to some recipients they were not only unwelcome but positively objectionable (R.T. 224–225; 240–245).

The volume of circulation of this material, the indiscriminate possible market to which it was disseminated, the character of the enclosures all indicate the type of pandering which was held to support the finding of obscenity in *Ginzburg, supra,* and distinguishes this case from Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967).

(4) *Alleged errors at trial*

■■ Appellants finally complain of several errors allegedly committed by the trial court. We do not think the court abused its discretion in limiting defense counsel's *voir dire* examination of prospective jurors. Fed.R.Crim.P. 24(a). Nor do we believe that the court abused its discretion in refusing defense counsel's request to grant a severance. Fed.R.Crim.P. 14.

■ The court properly excluded the testimony of appellants' attorney that he had advised appellant Miller that the materials were non-obscene. Schindler v. United States, 208 F.2d 289, 290 (9th Cir. 1953), cert. denied, 347 U.S. 938, 74 S.Ct. 633, 98 L.Ed. 1088 (1954). *See* Rosen v. United States, 161 U.S. 29, 41, 16 S.Ct. 434, 480, 4 L.Ed. 606 (1896). Miller took the stand and was permitted to testify to his own belief that he was not selling obscene material. The jury apparently believed other evidence to the contrary.

■ The court did not abuse its discretion in excluding evidence in the form of books and other publications offered by defense counsel to prove a contemporary national community standard. Schindler v. United States, *supra.*

Affirmed.

BARNES, Circuit Judge (concurring):

I concur. The widely and even carelessly disseminated material was pornographic, and its appeal was to a prurient interest. The pandering that dominated the distribution of material in *Ginzburg, supra,* clearly existed here.

---

3. The mailing to "Occupant" contained a brochure advertising "The Name Is Bonnie" with a selection of reproductions from the photographs. It also contained an advertisement for another of defendants' books showing sexual orgies with groups and individuals engaging in various acts of perversion. It also contained reproductions of photographs of a nude male and female in various positions of intercourse advertising a book by the name of "Intercourse."

The mailing to the high school bookstore contained a catalogue of defendants' various publications containing names of books some with pictures of erotic character.

Witnesses, both adult and juvenile, testified to the unsolicited receipt of these materials.

Until the Supreme Court finds that 18 U.S.C. §§ 1461 and 1462 are unconstitutional, no matter who may receive the mailings, convictions based upon such indiscriminate and wholesale mailings of obscene material with reckless disregard of the identity and age of recipients must be

Affirmed.