**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ruth A. LINETSKY, Lionel Perry and Linetsky Products, Inc., Defendants-Appellants.**

No. 75–3009.

United States Court of Appeals, Fifth Circuit.

June 9, 1976.

Edwin M. Rosendahl, Beverly Hills, Cal., Meredith J. Cohen, Orlando, Fla., for defendants-appellants.

John L. Briggs, U.S. Atty., Mark L. Horwitz, Asst. U.S. Atty., Orlando, Fla., Robert Trout, Harold Damelin, B. Franklin Taylor, Jr., Act. Chief, Dept. of Justice, Gov. Reg. Sec., Crim. Div., Washington, D.C., for plaintiff-appellee.

Before TUTTLE, GODBOLD and GEE, Circuit Judges.

GODBOLD, Circuit Judge:

A jury in the Middle District of Florida found three California residents, Ruth A. Linetsky, Lionel Perry, and Linetsky Products, Inc., guilty under 25 counts of an indictment charging use of the mails to send into the Middle District of Florida "obscene, lewd, lascivious, indecent, filthy, and vile" advertisements and films, in violation of Title 18, United States.Code, § 1461 and § 2. We affirm on 23 counts, reverse on two counts.

The central issue before us concerns the effect in this case of an earlier ruling by the United States District Court for the Central District of California that certain of the materials here involved were as a matter of law not obscene, and of a subsequent decision by the Ninth Circuit in which it declined to issue a writ of mandamus directing that the judgment of the Central District of California be vacated.

The Florida indictment was returned July 18, 1974. It charged 18 separate mailings spanning a period from September 1970 through May 1973. All mailings were postmarked with the same name and an address located in the Central District of California. Sixteen Florida citizens received unsolicited advertising materials depicting explicit sexual conduct. A California postal inspector investigating the mailer used a "test name" and "test address" in Florida to purchase similar advertisements and two 8mm movie films. Three counts of the indictment alleged mailings of identical advertising brochures for "Sex in Marriage, Vols. I and II." Underlying seven other counts were identical advertising brochures for "Sex in Marriage, Vols. III and IV." These particular advertisements were sent to residents in Florida from September 1970 through January 1971.

In August 1971 Judge Irving Hill of the Central District of California considered multi-count indictments dated December 22, 1970, charging these appellants, among others, with violations of the same postal obscenity statute. To minimize discovery the parties in that case stipulated the underpinnings of the indictments. Among the numerous materials included were brochures promoting four-volume "Sex in Marriage" texts identical to those involved in ten counts of the Florida indictment. Despite the government's opposition, Judge Hill held hearings on defendants' pretrial motions to dismiss the indictments, and he admitted into evidence the stipulated materials together with certain magazines and films previously adjudicated in unrelated prosecutions to be constitutionally protected. In an attempt to protect its interests in the prosecution the government offered three advertisements from the case of *Miller v. U. S.*, 431 F.2d 655 (CA9, 1970). On August 12 Judge Hill found that the objectionable materials were as a matter of law not obscene and granted the motion to dismiss the indictments. *U. S. v. Ruth Linetsky, et al.*, No. 7145–(IH)–CD (C.D.Cal. 1971). The government unsuccessfully petitioned the Ninth Circuit for a writ of mandamus directing Judge Hill to vacate that order. *U. S. v. Hill*, 473 F.2d 759 (CA9, 1972).

Trial under the Florida indictment commenced May 7, 1975. At the government's request one of the counts was dismissed and the remaining 25 submitted to the jury, which returned a guilty verdict on each count. Appellants Linetsky and Perry received suspended imprisonment terms. Linetsky was placed on a three-year supervised probation and fined $5,000 on each count, a total of $125,000; if she paid the fines as to counts one through three ($15,-000 total) during the first two years of probation, the fine as to the remaining counts would be suspended. The court imposed on Perry two years of probationary supervision. The costs of the prosecution were assessed against Linetsky Products, Inc.

## I. Double jeopardy and collateral estoppel

Appellants' primary contention is that the Fifth Amendment's double jeopardy clause[1] and the collateral estoppel rule therein embodied[2] prohibited their indictment, prosecution, and conviction on ten specified counts of the Florida indictment which were grounded on interstate mailings of advertising materials previously adjudged in the California case to be not obscene.

In *Hill*, the Ninth Circuit framed two issues, the latter determinative of the former:[3] 1) Did the government have a right of appeal to either the circuit or the Supreme Court? 2) Did the judge's action place the defendants in jeopardy and, if so, should the writ issue? Holding that jeopardy had attached, the court explained:

1. "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S.Const., amend. V.

2. *See Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

3. Appeals by the United States in criminal cases are governed by the Criminal Appeals Act, 18 U.S.C. § 3731, as amended, Jan. 2, 1971, Pub.L. 91–644, Tit. III, § 14(a). The amendments were expressly made inapplicable to criminal cases begun in any district court before the effective date of enactment. Indictments filed before that date come within the proviso. *See U. S. v. Jorn*, 400 U.S. 470, 474, n. 1, 477–478, n. 6, 91 S.Ct. 547, 551, n. 1, 553, n. 6, 27 L.Ed.2d 543, 550, n. 1, 552, n. 6 (1971), and *U. S. v. Enmons*, 410 U.S. 396, 399, n. 1, 93 S.

Ct. 1007, 1009, n. 1, 35 L.Ed.2d 379, 382, n. 1 (1973). Although the indictment in the *Hill* case was filed December 22, 1970, the court appeared to apply the amended statute, as suggested by this language in the opinion: "The Criminal Appeals Act, as amended, 18 U.S.C. § 3731, permits the Government to appeal in certain cases, 'except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution,' or 'after the defendant has been put in jeopardy.'" 473 F.2d at 761. Under either the amended or unamended version of the statute, however, the government's right of appeal from the grant of a motion to dismiss requires determination of whether the defendant has been put in jeopardy.

. . . defendants had been arraigned on valid indictments and had pled. The court then "heard" evidence going to the general issue—whether the matter mailed was "obscene," a necessary element of the offense. Having considered the evidence, the court ruled, "as a matter of law," that the matter was not obscene. The court did not hold that the indictments were defective. On their faces, they were valid. What the court held, in substance, was that the defendants before it were not guilty. Surely, a court is "hearing" the evidence just as much when it receives written evidence as when it hears oral testimony of a witness.

473 F.2d at 761.

While the Ninth Circuit opinion characterized its rationale as consistent with the general rule on attachment of jeopardy "where a case is tried to a court without a jury," it also acknowledged that "the district judge did not think that he was holding a trial; he believed that jeopardy had not attached." *Id.* at 762. The controlling factor, in the appellate court's view, was that the judge had rendered a decision for the defendants as a matter of substantive law:

. . . the court received evidence going to the general issue, and it rendered a decision which was, in substance though not in form, a finding that the defendants were not guilty as a matter of law . . . guilt is precisely the issue that the court decided; it held that the material received in evidence was not obscene, and dismissed the cases. In substance, though not in form, that was an acquittal.

*Id.* at 763. Having determined the jeopardy issue adversely to the government, the court declined to issue the discretionary writ of mandamus, explaining that "to issue the writ would accomplish nothing. Having set aside his order, the district judge would have to dismiss again on the ground of double jeopardy." *Id.*

▮ Our next inquiry concerns the effect which the District Court for the Middle District of Florida was required to give to the two decisions, district and circuit, arising from the California indictments. The government contends that the Ninth Circuit's decision in *Hill* conflicts with the Supreme Court's holding in *Serfass v. U. S.,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975), that even where disposition of a motion to dismiss an indictment is the "functional equivalent of an acquittal on the merits," double jeopardy has no application until a defendant is "put to trial before the trier of facts, whether the trier be a jury or a judge." Appellants reply by emphasizing the Supreme Court's failure to overrule or disapprove *Hill* in its reference to that case at n. 6, *id.* 420 U.S. at 382–383, 95 S.Ct. at 1060, 43 L.Ed.2d at 271. Even if we accept the Ninth Circuit's view that jeopardy attached in the California proceedings, we agree with the government that the traditional notions of double jeopardy have no application to the instant case because appellants have not been indicted twice "for the same offense." Appellants insist that mailings of identical materials to different addresses do not represent different offenses under the charging statute, because the "acts condemned by § 1461 are complete when the allegedly offending material is deposited in the mails." To support a claim of double jeopardy, however, it must be shown that the two offenses charged are in law and in fact the same offense. *Dryden v. U. S.,* 403 F.2d 1008 (CA5, 1968), *U. S. v. Wayman,* 510 F.2d 1020, 1029 (CA5, 1975). See *Blockburger v. U. S.,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). While the counts at issue in the Florida and California indictments are rooted in the same statutory provisions, charge the same substantive violation, and involve mailings of the same allegedly obscene material, factual identity is lacking with respect to the overt acts. The similar counts in the two indictments involve not only different addresses but also mailings which are temporally and geographically distinct.

▮ Next we look at collateral estoppel. In *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme

Court announced that the federal rule of collateral estoppel is embodied in the Fifth Amendment's guaranty against double jeopardy. Justice Stewart wrote:

"Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

*Id.* at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475.

There being no disagreement regarding identity of parties, we focus on whether the California proceedings before Judge Hill in 1971 culminated in a valid and final judgment on an issue of ultimate fact which was also a necessary element for conviction of appellants on the 1974 Florida indictment. It is not here disputed that Judge Hill's pretrial dismissal of the indictment against appellants constituted a "final judgment." Rather its validity is disputed. The government asserts that Judge Hill had no power to enter the order, while plaintiffs assert, expressly or impliedly, that Judge Hill did have power and, even if he did not, the decision by the Ninth Circuit not to disturb his order required the Florida District Court to give collateral estoppel effect to it. We hold that under the principles spelled out in *Serfass, supra,* the federal court in Florida correctly denied the claim of collateral estoppel.[4] Our conclusion does not rest on the question of attachment of jeopardy in the California proceeding[5] but

on the issue of a judge's power to determine guilt or innocence at the pretrial stage where the jury trial right has not been waived. Judge Kilkenny, the dissenting judge in *Hill,* squarely addressed this issue and argued that the District Judge exceeded his powers by trying a fact issue on which "petitioner had a constitutional right to a jury trial," defendant not having waived that right "with the approval of the court and the consent of the government." See Art. III § 2 of the United States Constitution and Rule 23, Fed.R.Crim.P. The majority panel, while not viewing the matter as one of the issues presented by the government's petition, conceded that the trial judge's procedure may have been "unauthorized and improper:"

Perhaps, had the Government applied to us for relief before the judge heard the motion and received evidence in support of it, we could have granted relief under the All-Writs Act. But the Government did not do so, and the trial judge did proceed to receive evidence and to rule.

*Id.* at 762. In its discretion the court declined to issue a writ of mandamus to vacate Judge Hill's order. The opinion makes clear that the key factor weighing in that discretion was its view that on remand a double jeopardy ruling would be inevitable and necessitate dismissal of the indictment.

The problem before us is different from that before the Ninth Circuit, where the court, in the exercise of its discretion in a mandamus proceeding, pragmatically assayed and dealt with what it considered to be the ultimate necessity of dismissal on double jeopardy grounds. In the present

4. This makes unnecessary our resolution of a threshold question posed by the government, whether the collateral estoppel holding of *Ashe v. Swenson* is limited to prosecutions of offenses fragmented from the same criminal act or transaction.

5. "The rule against double jeopardy is broader than the doctrine of res judicata insofar as its applicability depends upon the attachment of jeopardy in the first prosecution, rather than upon rendition of judgment." 1B Moore's Federal Practice ¶ 0.418, at 2760 (2d ed. 1974). On the other hand, double jeopardy does not require a final judgment, but finality is a prereq-

uisite for res judicata and collateral estoppel. The rule of collateral estoppel is, of course, an aspect of the broader principle of res judicata, which also encompasses "bar" and "merger". "The prohibition against double jeopardy may preclude a second prosecution in many situations in which res judicata would accomplish the same result . . . Although both double jeopardy and res judicata may be inapplicable, under the principle of collateral estoppel certain facts adjudged in one prosecution may be conclusively established in a second prosecution involving a different offense." *Id.* at 2751.

case double jeopardy is not applicable, and we face head-on the bare question that the Ninth Circuit did not have to face, and did not face. That question is whether, under the principles announced in *Serfass*, the District Judge of the Middle District of California, in the absence of a waiver of jury trial, had the power to conduct a hearing on and decide a fact issue that amounted to a pretrial determination of guilt or innocence.

In *Serfass* the government appealed to the Third Circuit from a district court's dismissal of an indictment charging petitioner with willfully failing to report for and submit to induction into the Armed Forces. Prior to his indictment, Serfass had submitted a post-induction order claim for conscientious objector status to his local board. He moved to dismiss the indictment on the ground that the board did not state adequate reasons for refusing to reopen his file. The District Court granted dismissal, holding that Serfass was "entitled to full consideration of his claim prior to assignment to combatant training and service" and that the local board's statement of reasons for refusing to reopen his Selective Service file was "sufficiently ambiguous to be reasonably construed as a rejection on the merits, thereby prejudicing his right to in-service review." On the government's appeal, Serfass argued that the Court of Appeals lacked jurisdiction under 18 U.S.C. § 3731 because the double jeopardy clause barred further prosecution. Affirming the Third Circuit, the Supreme Court held that the double jeopardy clause does not bar an appeal by the United States under § 3731 from a pretrial order dismissing an indictment, since in that situation the criminal defendant has not been "put to trial before the trier of facts, whether the trier be a jury or a judge." 420 U.S. at 388, 95 S.Ct. at 1056, 43 L.Ed.2d at 274.

In following the attachment of jeopardy principle announced in a prior decision,[6] the Court explained:

Petitioner had not waived his right to a jury trial, and, of course, a jury trial could not be waived by him without the consent of the Government and of the court. [Citations omitted.] *In such circumstances, the District Court was without power to make any determination regarding petitioner's guilt or innocence . . . At no time during or following the hearing on petitioner's motion to dismiss the indictment did the District Court have jurisdiction to do more than grant or deny that motion,* and neither before nor after the ruling did jeopardy attach. [Emphasis added.]

*Id.* at 388, 95 S.Ct. at 1063, 43 L.Ed.2d at 274–275. The Court recognized that "an accused may raise defenses or objections before trial which are 'capable of determination *without the trial of the general issue,*' Fed.Rule Crim.Proc. 12(b)(1), and . . . he must raise certain other defenses or objections before trial, Fed.Rule Crim.Proc. 12(b)(2)." *Id.* at 391, 95 S.Ct. at 1064, 43 L.Ed.2d at 276 [emphasis added]. The objection raised in the pretrial motion to dismiss the indictment filed before Judge Hill was directed to the "general issue", that is, whether the matter mailed was "obscene". As the Ninth Circuit opinion emphasized, "what the court held, in substance, was that the defendants before it were not guilty . . . guilt is precisely the issue that the court decided." 473 F.2d at 761, 763. Such a guilt determination is inconsistent with the teachings of *Serfass*, which not only reinforces an accused's protection from the risks of conviction until "put to trial before the trier of facts, whether the trier be a jury or a judge," but also emphasizes that the trier must have "jurisdiction to try the question of the guilt or innocence of the accused." *Id.* The first interest, protection against the risk of pretrial conviction, was not vindicated, indeed not even involved. Certainly no one, not even plaintiffs, thought that Judge Hill could rule pretrial that as a matter of law the material *was* obscene. The motion to dismiss was a one-way street for defendants. If successful they would be freed. If unsuccessful they would proceed to the trial

6. *U. S. v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543, 553 (1971).

by jury that they had not waived. Although *Serfass* was decided in the context of whether jeopardy attached upon the issuance of a pretrial judgment, the interests central to it are no less applicable to the case before us where the context is collateral estoppel.

Interpretations by the lower courts of the judge-jury functions and of the standards to be applied in obscenity proceedings have frequently been inconsistent. It is apparent that Judge Hill thought a preliminary judgment on the issue of obscenity as a matter of constitutional law would be judicious and proper.[7] A number of district courts have followed this procedure, stressing the potential time-saving and trial-avoidance features of a pretrial non-jury determination that indicted materials are not legally obscene or that they are colorably obscene so that a fact issue is raised for a jury's determination. Rule 23, Fed.R. Crim.P. requires, however, that a defendant waive jury trial, with the court's approval and the government's consent, before he may seek to obtain pretrial "acquittal" with the judge as trier of fact.

## II

Appellants seek to reverse their convictions on other grounds that relate to (a.) grand jury instructions on applicable obscenity standards; (b.) obscenity vel non of materials underlying the indictment; (c.)

forum-shopping; (d.) residence of jurors; (e.) admissibility of evidence; and (f.) jury instructions.

### (a.) Grand jury instructions

 Our recent holding in *U. S. v. Slepicoff*, 524 F.2d 1244 (CA5, 1974), petition for cert. filed, 18 Cr.L. 4212 (U.S., Feb. 26, 1976) (No. 75–1226), disposed of the contention that the Florida indictment was invalidated by the prosecutor's allegedly improper instructions to the grand jury on the applicable obscenity test. The government controverts and the record does not conclusively establish the claim that instructions were based erroneously on *Miller*,[8] rather than *Roth-Memoirs*[9] standards. Like these appellants, Slepicoff—charged under 18 U.S.C. § 1461 with pre-*Miller* mailings of obscene advertising brochures—contended that the prosecutor's instructions to the grand jury to measure the obscenity of the material in question by the standards enunciated in *Miller*, voided the indictment under the rationale of *U. S. v. Wasserman*, 504 F.2d 1012 (CA5, 1974). Guided by the Supreme Court's analysis in *Hamling v. U. S.*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590, 620–621 (1974), we affirmed the validity of the indictment and held that "the mere tracing of the words of 18 U.S.C. § 1461 in the indictment was sufficient to apprise appellant of the charges against

7. During the course of proceedings on the motion to dismiss, the court commented:

"The technique here employed of determining under a pretrial motion to dismiss whether the material which is the basis of the indictment is colorably obscene or whether it is not obscene as a matter of law is a proper one, though it has not as yet been approved by any Court of Appeals so far as I can determine.

"Incidentally I note that the State of California has a procedure in its courts for doing this by pretrial motion. This technique is advantageous, it seems to me, to the parties and to the court, and its employment is in the interest of the administration of justice because in many instances, it can save the expense and time consumption of an unnecessary trial. If a jury were impaneled and a motion for acquittal would have to be granted at the conclusion of the Government's case because the accused material is not ob-

scene as a matter of law, is it not in everyone's interest to make such a declaration now under the procedure employed here?

"This procedure preserves the Government's right to appeal since jeopardy has not attached; and this procedure, if the decision is to dismiss, may save the litigants from going to trial unnecessarily.

"The technique employed here is justified in a persuasive opinion of Judge Rubin in *U. S. v. Head*, 317 F.Supp. 1138 D.C.La."

Record, at 74–75, *U. S. v. Linetsky, et al.*, No. 7145–(IH)–CD (C.D.Cal.1971).

8. *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

9. *Roth v. U. S.*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *Memoirs v. Massachusetts*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966).

him." 524 F.2d at 1247. "The rules governing the operation of a grand jury are much less formal than the rules governing the operation of a trial court. A grand jury need not be convinced beyond a reasonable doubt that a defendant is guilty; if an indictment is valid on its face, it is enough to call for a trial of the charge on the merits." *Id.*

### (b.) Obscenity vel non

■ The jury was instructed to test the obscenity of the advertising brochures and films underlying the indictment by the *Roth-Memoirs* guidelines [10] which prevailed during the period of the alleged mailings. In a motion to dismiss the indictment appellants contended that as a matter of law the materials were not obscene under those standards, and they now claim reversible error in the District Court's refusal to so hold.

■ We are urged to hold the materials herein involved not obscene because they are allegedly "far less explicit [and] much less graphic [than]," and "in a large sense, pale by comparison [to]" the principal materials underlying the indictment in *U. S. v. Wasserman,* No. A–72–CR–71 (W.D. Tex., Aug. 1, 1975), following remand, 504 F.2d 1012 (CA5, 1974).[11] Appellants complain that the "strict dictates of the First Amendment, the fair-play aspects of the due process provisions of the Fifth Amend-

ment and common legal sense all mandate that there be some recognizable uniformity of decision throughout this Fifth Circuit." Brief for appellant at 27. This plea for uniformity is met by the simple but significant fact that the *Wasserman* materials are not the same materials as those in this case. "If consistency in jury verdicts as to the obscenity vel non of identical materials is not constitutionally required, *Miller v. California, supra,* the same is true a fortiori of verdicts as to separate materials, regardless of their similarities." *Hamling v. U. S., id.* 418 U.S. at 101, 94 S.Ct. at 2899, 41 L.Ed.2d at 611. Moreover, application of local community standards by different triers of fact assures a degree of diversity in obscenity determinations.

■ This court is required to make an "independent constitutional judgment" on whether any of the materials alleged to be obscene are constitutionally protected. *Jacobellis v. Ohio,* 378 U.S. 184, 190, 84 S.Ct. 1676, 1679, 12 L.Ed.2d 793, 799 (1964); *U. S. v. Groner,* 494 F.2d 499, 501 (CA5), *cert. denied,* 419 U.S. 1010, 95 S.Ct. 331, 42 L.Ed.2d 285 (1974). Though appellants were properly tried under *Roth-Memoirs,* rather than under the test that was announced in *Miller* [12] about a month after the last overt act charged against them, they are entitled to an appellate judgment which considers both definitions of obscenity and

---

**10.** Three elements must coalesce:
1. The dominant theme, taken as a whole, appeals to a prurient interest in sex;
2. The material is patently offense because it affronts contemporary community standards relating to the description or representation of sexual matters;
3. The material is utterly without redeeming social value.

**11.** Wasserman's conviction following a jury trial on a nine-count indictment under 18 U.S.C. § 1461 was reversed and remanded for retrial under *Roth-Memoirs* standards. On remand the cause was submitted to U. S. District Judge Roberts, sitting without a jury, and the parties stipulated that he would reach a verdict based upon the evidence adduced at the previous trial as to Count Eight, which verdict would be the verdict of the court on all other counts. The court ruled that the government "failed to discharge its 'virtually impossible' burden of prov-

ing beyond a reasonable doubt, under the *Roth-Memoirs* test, that the [four "Climax" magazines involved in Count 8] are legally obscene." Appellants here have submitted for our comparison copies of the magazines, which graphically display explicit, ongoing sexual activity.

**12.** *Miller* outlined these basic guidelines for the trier of fact in obscenity proceedings:
1) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest;
2) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and
3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

accords them the benefits, if any, of the newer standard. Any count based on materials which cannot be deemed obscene under both tests must be dismissed. *U. S. v. Thevis*, 484 F.2d 1149, 1155 (CA5, 1973), cert. denied, 418 U.S. 932, 94 S.Ct. 3222, 41 L.Ed.2d 1170 (1974).[13] *Thevis* was under submission in this court after oral argument when *Miller* was decided. We discerned in *Miller* a Supreme Court declaration that "all obscenity cases which had not reached final adjudication should be reexamined in light of its clarification of previous standards and its declaration of new standards." Accordingly, we acknowledged "our duty, under the *Miller* remands and in view of the care with which the judiciary must protect First Amendment rights, to assure that no one is convicted under earlier extant standards if they are more restrictive of pornography than those in *Miller*." *Id.* at 1154–55.

■ Applying the three-pronged tests of both *Roth-Memoirs* and *Miller*, we have examined the two films and numerous advertisements underlying the 25 counts of the indictment submitted to the jury. We conclude that the advertisements underlying Counts 14 and 16 do not fit the legal parameters of obscenity, and, accordingly, the convictions on those counts must be reversed. The advertisements involved [14] make a sales pitch for a movie projector. One is a brochure specifying and illustrating the features and advantages of the projector and the other is a letter soliciting purchases. Neither of these innocuous documents contains any material, photographic or textual, that comes close to obscenity.

■ The advertisements and films in the remaining counts display clear and vivid color depictions of genitals and of seminal fluid (actual or simulated) as well as ongoing episodes of copulation (actual and simulated) and masturbation, and of fellatio, cunnilingus, and other variant sexual activity involving heterosexual and homosexual couples and groups. Sparse and marginally emphasized printed material, descriptive of the ultimate sexual acts illustrated, occasionally accompany the splash of pictures. We have no difficulty finding that these materials possess the requisite prurient appeal and patent offensiveness under either the *Roth-Memoirs* or *Miller* definitions. Nor do we discern in them the "serious literary, artistic, political, or scientific value" envisioned by *Miller*. With respect to whether the materials are "utterly without redeeming social value" under *Roth-Memoirs*, the Supreme Court has characterized the burden imposed by this test as virtually impossible for the prosecution to meet.[15] Nevertheless, the decisions of this circuit applying the test have narrowly interpreted the content of "redeeming social value."[16] Giving effect to the prior Fifth Circuit decisions, as we must, we hold with respect to

**13.** *See* similar holding in *Hamling, id.*, 418 U.S. at 102, 94 S.Ct. at 2899, 41 L.Ed.2d at 611. The "dual test" approach adopted in *Thevis* has been followed consistently in this circuit. *U. S. v. Cote*, 485 F.2d 574 (CA5, 1973), cert. denied, 418 U.S. 954, 94 S.Ct. 3217, 41 L.Ed.2d 1166 (1974); *U. S. v. Millican*, 487 F.2d 331 (CA5, 1973), cert. denied, 418 U.S. 947, 94 S.Ct. 3233, 41 L.Ed.2d 1177 (1974); *U. S. v. Groner, supra*.

**14.** The record is not entirely clear as to what exhibits relate to these counts. As best we can discern they are the same two documents for each count, numbered 13D and 13E for Count 14, and 14D and 14E for Count 16.

**15.** *Miller v. California*, 413 U.S. at 22, 93 S.Ct. at 2613, 37 L.Ed.2d at 429.

**16.** In *Thevis* the fact that literary matter in significant proportions was included with numerous pornographic pictures in some of the magazines inspected by the court precluded a finding that these magazines were utterly without redeeming social value. Included were "short stories of at least arguable merit as well as discussions of lesbianism, homosexuality, nudity, censorship, photography, marital sexual problems, and the nude in fine art." 484 F.2d at 1157. As we have already suggested, nothing in the materials presented here rises to the level of even questionable literary or educational value. In *U. S. v. Cote*, 485 F.2d 574 (CA5, 1973), cert. denied, 418 U.S. 954, 94 S.Ct. 3217, 41 L.Ed.2d 1166 (1974), this court, following the dual test approach of *Thevis*, deemed obscene as a matter of law picture books, films, and advertisements depicting sexually suggestive poses and body movements, which did not include the explicit sexual activity common to the arrays of nudity before us.

all counts other than 14 and 16, that at least some, and in some instances all, of the material underlying each count is "utterly without redeeming social value." The judgment of conviction as to these counts must be affirmed.

### (c.) Forum-shopping

■ Another ground alleged in appellants' motion to dismiss the indictment was discriminatory harassment reflected by governmental forum-shopping. The allegation was unsupported, and we discern no abuse of discretion in the trial court's refusal to hold an evidentiary hearing on this point.[17]

### (d.) Residence of jurors

■ In response to a May 7, 1975, voir dire inquiry two jurors eventually selected said they had been residents in the Middle District of Florida for five years. From their replies appellants speculate that for purposes of measuring obscenity by "local community standards," these jurors may not have been members of the relevant "community" from September 17 to December 16, 1970, the earliest period of overt acts indicted. We decline to join the speculation, and appellants point to no reviewable trial court rulings on their attempts, if any, to establish facts or make challenges in this regard.

### (e.) Admissibility of evidence

■ As evidence purportedly relevant to criminal intent, appellants proffered Judge Hill's order of dismissal and the stipulated advertising brochures underlying the California indictment. Alleging that 13 of the 25 counts involved in the Florida indictment were dated after Judge Hill's ruling on the obscenity vel non of similar mailings, they argued that "realistically no reasonable person could not be motivated by [a] determination of the United States District Judge in their home district." Record, vol. V, at 338. In this court appellants have not abandoned this argument,[18] but we find no basis in fact for their claimed reliance on Judge Hill's determination. The mailings charged in Counts 12 and 14–26 of the Florida indictment occurred after the August 1971 ruling in California. A comparison of the advertising brochures and films involved in these counts with those adjudged not obscene in the California indictment reveals different materials in all except one count.[19] At trial appellants admitted that the materials proffered were not identical to those ruled not obscene but argued their relevance on the ground they were "substantially comparable, in fact, less explicit." Record, vol. V, at 338. They did not seek an admission-in-part and a special charge for the one count involving identical materials. In these circumstances the trial

---

17. Appellants' counsel subpoenaed Postal Inspector M. R. Lotz but was unsuccessful in his efforts to establish through this witness a basis for the harassment claim. The following colloquy is relevant:

> The Court: . . . Now, if there is harassment, the issue of actual harassment must be proved, it seems to me, by extrinsic acts separate and apart from what might be in the mind of Mr. Lotz or government counsel.
>
> \* \* \* \* \* \*
>
> "You can prove harassment if you can prove it by something other than the fact they just brought the case here.
>
> "Mr. Rosendahl: I don't know what I can prove until I get this man on the stand, Your Honor.
>
> "The Court: I am not going into a discovery procedure here. I am not going to do that."

Record, vol. III, at 10–11.

18. In their most obvious reference to reliance, appellants opine:

> "Common sense indicates that a lay jury would be greatly impressed by a judgment of acquittal as to identical materials by a federal court in the district where Appellants reside, and an extension of that same common sense would also indicate to that same lay jury what impact that 1971 ruling of the California District Court must have had on the minds of the individual lay Appellants, and to what probable extent it influenced Appellants' 'intent' in the instant case."

Brief for appellants at 18.

19. Govt. Exh. 18G, offered to document the May 24, 1973, mailing alleged in Count 26 of the Florida indictment, contained a sexually-oriented advertising brochure captioned "Provocative! Daring! Wild!" The same brochure was one of several included in Counts 5, 8 and 9 of the California indictment.

court's exclusion of the evidence was not reversible error.

Appellants have also advanced the position that evidence that they "had been previously acquitted of identical charges as to 10 counts of the indictment" was "highly relevant" to negate the general criminal intent required for the overt acts charged in *all* counts of the Florida indictment.[20]

■ Determinations of the relevance and admissibility of evidence lie largely in the discretion of the trial court: *U. S. v. 110 Bars of Silver, 3 Crucibles of Silver, 11 Bags of Silver Coins,* 508 F.2d 799, 802 (1974); *U. S. v. Allison,* 474 F.2d 286, 288–289 (CA5, 1973); *Shale v. U. S.,* 388 F.2d 616, 618 (CA5), *cert. denied,* 393 U.S. 984, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968).

■ The only scienter relevant for conviction under 18 U.S.C. §§ 1461–2 is general knowledge that the material is sexually oriented; knowledge that the material mailed is legally obscene is not required. *U. S. v. Hill,* 500 F.2d 733 (CA5, 1974), *cert. denied,* 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975); *U. S. v. Sulaiman,* 490 F.2d 78 (CA5), *cert. denied,* 419 U.S. 911, 95 S.Ct. 192, 42 L.Ed.2d 152 (1974). See *Hamling v. U. S.,* 418 U.S. at 123–124, 94 S.Ct. at 2909, 41 L.Ed.2d at 624 (1974), where the Supreme Court accorded petitioners the benefit of *Miller* principles announced subsequent to their § 1461 trial but rejected their contention that proof of scienter in obscenity prosecutions requires "at the very least, proof both of knowledge of the contents of the material and awareness of the obscene character of the material." The Court explained:

> It is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributed, and that he knew the

character and nature of the materials. To require proof of a defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law. Such a formulation of the scienter requirement is required neither by the language of 18 U.S.C. § 1461 . . . nor by the Constitution.

Appellants attempt to blunt the effect of these principles on the admissibility issue by conceding the scope of the specific scienter that is the government's burden of proof but alleging that from a defense standpoint their lack of general criminal intent always constituted relevant evidence, and that the proffered exhibit had a "tendency" to "make the existence of [a] fact," *i. e.,* lack of *mens rea,* "more probable than it would be without" such "evidence". Brief for appellants at 18. See Rule 401, Rules of Evidence for United States Courts. We find no abuse of discretion in the trial judge's assessment of the *mens rea* relevant under § 1461 and his ruling that the evidence offered was not sufficiently probative.

### (f.) Jury instructions

■ The final error submitted is the District Court's failure to instruct the jury whether the term "contemporary" as used in "contemporary community standards" was applicable to the dates of the overt acts charged, the date of the jury instructions, or to some other point in time. Appellants offered no instructions on this issue and did not object to the court's instructions. There is no merit to the contentions that their failure to object should be excused and that the instruction as given was plain error under Rule 52, Fed.R.Crim.P.

---

**20.** Specifically appellants contend:

". . . the proffered Exhibit A was pointedly relevant evidence of Appellants' state of mind during the critical period covered by the Indictment, 1970–1973. When the 'Order Dismissing Indictment' was made by the California District Court in August 1971, it constituted relevant evidence which confirmed Appellants' state of mind between September

17, 1970 (the date of the earliest count, Count One) and August 12, 1971, the date on which said Order was made, and said Exhibit A was also, and likewise, relevant evidence of Appellants' date of mind between August 1971, and the date of the latest overt act charged in the Indictment, May 24, 1973 (Count Twenty-Six)."

Brief for appellants at 19.

III

The convictions under Counts 14 and 16 are REVERSED. The convictions under all other counts are AFFIRMED.