UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas David ROBINSON, Homer Lee Miller, Jr., a/k/a Mike Miller, and Malcolm B. Davis, Defendants-Appellants.

No. 77–5604.

United States Court of Appeals,
Fifth Circuit.

Feb. 2, 1979.

Jerry W. Biesel, Dallas, Tex., for Faulkner.

Jerry W. Melton, Dallas, Tex., for Robinson.

Phil Burleson, Dallas, Tex., for Miller.

Warren Burnett, Richard Clarkson, Odessa, Tex., for Davis.

Kenneth J. Mighell, U. S. Atty., Fort Worth, Tex., Judith A. Shepherd, Shirley Baccus-Lobel, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before GEWIN, RONEY and GEE, Circuit Judges.

RONEY, Circuit Judge:

In *United States v. Clements*, 588 F.2d 1030 (5th Cir. 1979), we upheld the Government's contention that a gambling operation in Amarillo, Texas could be combined with a gambling operation in Dallas-Fort Worth which is the subject of the instant case in order to furnish the "five or more persons" necessary to create the gambling business proscribed by 18 U.S.C.A. § 1955. We hold here that two defendants, Robinson and Miller, having been convicted for their role in the Dallas-Fort Worth gambling operation in *Clements*, were subjected to double jeopardy in this case. They were again tried and convicted for their Dallas-Forth Worth gambling activity notwithstanding the additional connections between the Dallas-Fort Worth operation and Austin and San Antonio gambling operations in this case. We, therefore, reverse their convictions. As to the third defendant, Davis, who was not tried in the prior case, but who was shown to be a part of the Dallas-Fort Worth operation, we affirm his conviction against the contention that the trial court erred in not granting a mistrial, in refusing to give certain requested instructions, and in admitting evidence obtained under allegedly faulty warrants.

## Facts

This case arose from the same FBI investigation of Texas gambling operations which gave rise to *United States v. Clements, supra.* The details of this investigation are adequately set forth in that case and need not be detailed here. The focal point of the instant prosecution was the Dallas-Fort Worth operation. The evidence at trial tended to show that defendant Miller, assisted by defendants Robinson, Davis, Jones, and Faulkner, ran a bookmaking business which accepted wagers on professional and collegiate sporting events. The gross revenues of the business exceeded a quarter of a million dollars a day during the period from September 1, 1975 through January 15, 1976. Two other defendants, Joseph and Salinas, whose trials were severed, allegedly operated small gambling businesses interconnected with the Dallas-Fort Worth operation in Austin and San Antonio respectively. Defendant Jones entered a plea of guilty and was severed. The jury returned a verdict of guilty as to defendants Miller, Robinson, Davis, and Faulkner and not guilty as to defendant Stone. Miller, Robinson, and Davis appeal.

## Miller/Robinson: Double Jeopardy

Defendants Miller and Robinson made timely pretrial motions for dismissal on grounds of double jeopardy which were carried pending receipt of the Government's evidence and then dismissed.

The claim of double jeopardy is based upon defendants' convictions in the companion case of *United States v. Clements*, 588

F.2d 1030 (5th Cir. 1979). In that case, defendants Miller and Robinson were shown to conduct what the Government there termed "a Dallas-Fort Worth operation" which was linked to the Amarillo operation by the regular conveyance of line information and acceptance of lay off bets in sizable amounts. This Court affirmed defendants' convictions, holding the facts demonstrated a linkage between the Amarillo and Dallas-Fort Worth operation sufficient to permit Miller and Robinson to be counted together with the members of the Amarillo operation in order to satisfy the statutory requisite of "five or more persons."

The Fifth Amendment of the United States Constitution forbids that "any person be subject for the same offense to be twice put in jeopardy of life or limb." The double jeopardy clause protects not only against a second prosecution for the same offense after acquittal, but against a second prosecution for the same offense after conviction. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). It is well settled that it must be shown that the two offenses charged are in law and in fact the same in order to sustain a double jeopardy claim. *United States v. Linetsky*, 533 F.2d 192, 197 (5th Cir. 1976). Defendants have the burden of proving double jeopardy. *United States v. Parker*, 582 F.2d 953 (5th Cir. 1978); *Rothaus v. United States*, 319 F.2d 528, 529 (5th Cir. 1963).

Where the offense charged is conduct of an illegal gambling business in violation of 18 U.S.C.A. § 1955, the identity of time and place and the use of some overlapping evidence is not decisive.[1] In such a case the determination of whether one or two offenses have taken place for double jeopardy purposes must rest upon the peculiar facts of each case.

The facts indicate that there were a series of interconnected gambling businesses operating in Texas. The Dallas-Fort Worth operation was at the hub of these operations, serving as a source of line information and a lay off point. The satellite operations were the Amarillo operation, the subject of the prosecution in *United States v. Clements, supra*, the Austin operation, and the San Antonio operation. The latter two operations were basically small one-man affairs. The Amarillo operation, on the other hand, was much more substantial. In each case, Dallas-Fort Worth accepted lay off bets from and gave line information to the other businesses. In addition, Dallas-Fort Worth accepted bets from "nonprofessional" bettors who were not conducting a gambling business.

This case is conceptually difficult. If Robinson and Miller had been demonstrated to be a part of the Amarillo operation in *Clements* by personal activities separate and apart from their operation of the Dallas-Fort Worth gambling business, they

1. 18 U.S.C.A. § 1955 reads in part:

Prohibition of illegal gambling businesses

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

(3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

18 U.S.C.A. § 2, under which defendants also were charged, reads:

Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

could not claim double jeopardy. It is possible for an individual to conduct more than one business. On the other hand, even if such activities were a part of the Dallas-Fort Worth operation, but that operation consisted of several individual businesses, neither could claim double jeopardy for conducting each of those businesses. For instance, if part of the Dallas-Fort Worth operation accepted lay off bets from and provided line information to Amarillo as a separate business and did the same thing with the gambling businesses in Austin and San Antonio, defendants might conceivably be charged with conducting each of those separate businesses without being placed in double jeopardy. Likewise, if the Dallas-Fort Worth operation consisted of a "wholesale" business, engaged in regularly accepting substantial lay off bets from and exchanging line information with other professional gambling businesses, while at the same time conducting a separate "retail" business by accepting bets from customers who are not themselves conducting a gambling business, there would be no double jeopardy problem from separate convictions.

The difficulty with the Government's argument in this case, however, is that the facts do not support any of these hypothetical "separate business" conceptions.

The evidence tends to show the Dallas-Fort Worth business as a unified whole. Miller appears as its central figure with the other defendants serving in secondary positions. Robinson's role included assisting in operating the telephone lines. The evidence does not indicate that there was any differentiation between the business of taking lay off bets from other operations and of taking bets directly from bettors. No separate books, telephone lines, code systems, or the like were introduced into evidence. The facts merely show an operation with an internal and external aspect. The two were so intertwined that it is impossible to separate them. The volume of the internal business, for example, permitted the operation to handle lay off bets from outside Dallas. There is no apparent line of demarcation in the Dallas-Fort Worth oper-

ation by which it can be carved into two or more separate businesses.

The Government suggests that Miller and Robinson should be regarded as members of the Amarillo business for purposes of *Clements*, and as members of the Dallas-Fort Worth operation for purposes of this case. The facts indicate, however, that the focus in *Clements* was on the Dallas Bookmaking Operation (a headnote in the Government's brief in *Clements*). It was not shown that Miller and Robinson played any direct individual role in the operation of the Amarillo business nor that their involvement was distinguishable from their conduct of the Dallas-Forth Worth business.

In prosecuting interdependent operations such as those involved in the instant case and *Clements*, the Government has considerable flexibility. Where the evidence shows a substantial linkage between two independent operations, the Government may treat the operations as one business for purposes of 18 U.S.C.A. § 1955. If it chooses to do so, it may include all persons involved in the interrelated operations to arrive at the prerequisite five. It may not, however, without more treat the same persons as being involved in separate businesses in another prosecution to avoid double jeopardy. Because defendants Miller and Robinson have been convicted of conducting the Dallas-Forth Worth gambling operation in *United States v. Clements, supra,* their convictions in the instant case constitute double jeopardy and must be reversed.

■ In this connection, it must be noted that the indictments in the two cases were identical, except for the naming of different codefendants in each case, and the same wiretap produced the bulk of the evidence in both cases. The effect of the holding that defendants Miller and Robinson may not be twice convicted for operating one gambling business does not mean, of course, that they may not be counted in the instant case toward the "five persons" necessary under the statute for the conviction of any other persons involved in the business.

Davis

Having reversed the convictions of Miller and Robinson, it is necessary to take up the issues raised by the remaining defendant, Davis. Three points are raised: grounds for a mistrial based on remarks made by the prosecutor in the presence of jury members; error in failure to give requested instructions; and the presence of probable cause for the wiretap and search warrants.

### (1) *Motion for a Mistrial*

■ Codefendant Stone called an expert witness, Joey Boston, a Las Vegas bookmaker, who testified that Stone's intercepted conversations were mere bets and not lay off bets. At the conclusion of his testimony, Stone's counsel requested that Mr. Boston be excused. The prosecutor, Mr. Badger, offered no objection and the witness was excused. Afterwards Mr. Badger approached Stone's counsel at the elevator outside the courtroom and asked that Boston not be released so that he might be recalled for further testimony. Stone's counsel declined because Mr. Boston had to catch a plane. After an interchange, Mr. Badger remarked that "he was going to run off anyway so it didn't make any difference." This incident occurred within earshot of several jurors.

Stone made a timely motion for mistrial in which he was joined by the other defendants. Ruling that the remarks were not so inflammatory as to result in prejudice, the trial court denied the motions. The court instructed the jury to disregard the incident. Mr. Boston's testimony apparently was not discredited because Stone was acquitted. A review of the record convinces us that the court's instructions were sufficient to remedy any prejudice which may have occurred.

### (2) *Instructions*

■ Davis contends the court erred in failing to instruct the jury with regard to the necessity of a constant exchange of line information. Defendant misperceives the relevance of such an instruction. Exchange of line information becomes an issue only where independent operations are linked together. Defendant Davis' role was hardly that of an independent operator. The facts tend to show that he assisted Miller in running the Dallas-Fort Worth business, maintained records, and calculated the division of profits. The facts showed all the jurisdictional requirements of § 1955 to be met in the Dallas-Fort Worth operation, without including any other operations. An instruction on exchange of line information would not have helped Davis. In any event, the court's instruction regarding the interrelationship of independent operations correctly stated the law. *See United States v. Clements*, 588 F.2d 1030 (5th Cir. 1979).

### (3) *Probable Cause for Wiretaps and Search Warrant*

Defendant Davis also urges that materials produced as a result of a telephone wiretap and search be suppressed because the warrants are invalid. The warrants challenged in this case are the same warrants which were upheld in *United States v. Clements, supra.* For the reasons stated in that opinion, we affirm the trial court's denial of defendant's motion to suppress.

### Conclusion

Having concluded that defendants Miller and Robinson have twice been placed in jeopardy for the same offense in violation of the Constitution, we reverse their convictions. The trial court, however, properly dismissed defendant Davis' motion for a mistrial, refused the requested instruction, and admitted evidence gathered from the wiretap order and search warrant. Davis' conviction, therefore, is affirmed.

REVERSED IN PART and AFFIRMED IN PART.