Avram **FREEDBERG, et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF
JUSTICE, et al., Defendants.**

Civ. A. No. 88–1417.

United States District Court,
District of Columbia.

June 8, 1988.

Elkan Abramowitz, New York City,
David E. Kendall, Gerald A. Feffer, Washington, D.C., for plaintiffs.

Bradley L. Kelly, Asst. U.S. Atty., Washington, D.C., for defendants.

MEMORANDUM AND ORDER

JACKSON, District Judge.

Plaintiff Freedberg is the sole owner, president, and a director of plaintiff Consumer's Marketing Group, Ltd. ("CMG"), a

Delaware corporation with its principal place of business in Connecticut. Plaintiffs allege that CMG is a mail-order enterprise in the business of promoting and selling "sexually oriented materials." Defendants are the United States Department of Justice ("DOJ"), the Attorney General, the principal officials of DOJ's National Obscenity Enforcement Unit ("NOEU"), and the United States Attorneys and their assistants for four federal judicial districts in the states of Utah, Mississippi, Indiana, and Delaware. Plaintiffs sue pursuant to 28 U.S.C. §§ 1331 and 1343 to vindicate rights secured to them by, *inter alia*, the First and Fifth Amendments to the Constitution.

The complaint alleges that CMG (and Freedberg) have promoted and sold sexually oriented materials since 1976 (by mail since 1985); that the materials are constitutionally protected in that they have not been adjudged obscene; and that they have been and are being lawfully promoted and sold in accordance with U.S. Postal Service regulations. It further alleges that the Attorney General established the National Obscenity Enforcement Unit within the DOJ sometime after July, 1986, following issuance of the Final Report of the Attorney General's Commission on Pornography, and that, in substance, the avowed mission of the NOEU is to develop and employ "prosecutorial methods designed to put distributors of sexually oriented materials out of business." To that end, it continues, the Attorney General, the defendant officials of the NOEU, and the several defendant United States Attorneys and their assistants, have combined to cause plaintiffs to be investigated by grand juries in federal judicial districts in each of the four states, and imminently to be indicted and prosecuted in each—either simultaneously or *seriatim*—until a conviction is obtained under the federal obscenity statutes, 18 U.S.C. §§ 1461–65.[1]

Plaintiffs allege that their prosecution in four separate federal districts, whether simultaneously or consecutively, deprives them of substantive and procedural due process under the Fifth Amendment, and of the right of free speech under the First Amendment, and that defendants' collective decision to do so represents an abuse of prosecutorial discretion. They ask for declaratory and injunctive relief.

The matter is presently before the Court on plaintiffs' application for a preliminary injunction. Plaintiffs represent that they have been intimidated by the threat of prosecution to the point of ceasing to distribute their products in all of the states in which prosecutions appear to be forthcoming, and now refrain from advertising all of the materials under investigation by the several grand juries anywhere in the United States. They assert that one of their suppliers of mailing services has refused to continue to supply them, and employees have resigned. Other suppliers of services have been served with grand jury subpoenas. All are apprehensive of being involved.

Defendants have responded to the complaint with a motion for summary judgment which, being unsupported with evidentiary materials and in advance of answer, is, in essence, a motion to dismiss the complaint for failure to state an actionable claim. Defendants observe that the constitutionality of the federal obscenity statutes has been firmly established. Plaintiffs have no right to choose where they may be prosecuted; prosecution is entirely proper in any forum in which obscene materials are delivered, and each delivery is deemed a separate offense. The inhibitions plaintiffs claim to be suffering with respect to engaging in further business activities may be self-imposed, or at least self-serving, and disingenuous as well, and so also with the defecting suppliers and employees.[2]

---

1. The states (and the districts within them) were selected, plaintiffs charge, because defendants considered them to be venues in which the inhabitants are least tolerant of plaintiffs' products, and juries drawn from among them most likely to find the materials obscene. The districts are the Central District of Utah, the Northern District of Mississippi, the Northern District of Indiana, and the District of Delaware.

2. Plaintiffs, however, do not challenge the constitutionality of the federal obscenity statutes. They also do not claim that they can only be

Defendants then advert to the general rule that courts of equity may not enjoin "ongoing" criminal prosecutions, and invoke the separation of powers doctrine as reserving to the Executive Branch exclusive discretion to decide the circumstances under which an offense shall be prosecuted. Finally, they point to the fact that plaintiffs have an adequate remedy at law: they can move to quash grand jury subpoenas, and to dismiss indictments once returned, failing which they can stand trial to an acquittal in each prosecution.

Plaintiffs, for their part, reply that they are ready (if not altogether willing) to stand trial and submit their products to the judgment of a jury, but that they should be obliged to do so only once. It is the threat of multiple prosecutions which brings them to court now, in advance of the return of the first of the expected indictments.

For the following reasons the Court will deny defendants' motion for summary judgment, without prejudice, and will grant plaintiffs' motion for a preliminary injunction.

I.

To begin with, it is now axiomatic that, in reviewing the sufficiency of a complaint in the context of a motion to dismiss for failure to state a claim upon which relief can be granted (as the Court here treats defendants' motion for summary judgment), all of the well-pleaded factual allegations of the complaint must be taken as true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). Plaintiffs are entitled to all favorable inferences which may be drawn from

those facts. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). And the complaint may not be dismissed unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Thus, for present purposes, it must be assumed that defendants are acting in concert to cause plaintiffs to be prosecuted in at least four federal district courts, wherever jurisdiction may attach, until they are convicted (or until either side succumbs from exhaustion) with the express purpose of driving them out of the business of distributing materials that are so sexually explicit as to be criminal. Whether or not the materials are, in fact, criminal, i.e., obscene, will presumably be determined in each case by a jury, drawn from the populace of the federal judicial district in which the court sits, applying the contemporary standards of the average person in that community as to what is obscene. *Hamling v. United States*, 418 U.S. 87, 105–106, 94 S.Ct. 2887, 2901–2902, 41 L.Ed.2d 590 (1974).[3]

▮ If, indeed, that is what defendants intend, the Court concludes plaintiffs satisfy the first of the elements of a meritorious application for preliminary injunctive relief, viz., a likelihood of succeeding on the merits, although not precisely for the reasons advanced by plaintiffs.[4] Plaintiffs contend that deliberate decisions of government officials to prevent a person from pursuing a particular vocation is a denial of both sub-

---

tried in Connecticut. And they allege, without contradiction, that fear alone has motivated their business decisions and those of their associates.

3. The inference the Court draws from the facts alleged, which is (as required) favorable to the plaintiffs, is that all four grand juries are investigating, and all four will be asked to return indictments charging offenses related to, the same allegedly obscene sexually oriented materials. Sex and obscenity, however, as the Supreme Court has held, are not synonymous. *Roth v. United States*, 354 U.S. 476, 487, 77 S.Ct. 1304, 1310, 1 L.Ed.2d 1498 (1957).

4. Plaintiffs are entitled to preliminary relief if they can show that they are likely to prevail on the merits; that they will be irreparably injured without such relief while awaiting a final determination of the merits; that the equities favor them, in that others affected will not be substantially harmed if the relief is granted; and that the public interest will be served thereby. *See WMATC v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977); *Virginia Petroleum Jobbers Association v. FPC*, 259 F.2d 921, 925 (D.C.Cir. 1958).

stantive and procedural due process (citing, *inter alia, Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), and *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). The argument, however, begs the question. There is no right, constitutional or otherwise, to pursue an unlawful occupation (e.g., purveying contraband, whether narcotics, worthless stock, or obscenity), and the Court assumes that the government would be entirely within its rights to put such a tradesman out of business. And if its manner of doing so is by criminal prosecution, procedural due process would presumably be afforded by the trial and appeal.

■ Simultaneous criminal prosecutions of the same individual for the same offense in four separate federal judicial districts, however, cannot possibly be consistent with Due Process. An accused can only be present at one trial at a time. His witnesses, and his counsel, are likewise limited. The prospect of simultaneous prosecutions encounters so many other absolute constitutional obstacles that it is hardly possible defendants actually contemplate such a debacle. Nevertheless, the allegation that they do is credibly supported by an affidavit of plaintiffs' counsel of admissions of one of the defendants to that effect, and has not, at the moment, been repudiated of record by any of the other defendants, most notably, by the Attorney General and the principals of NOEU.

■ Successive prosecutions are somewhat less constitutionally dubious. Defendants correctly observe that each mailing of an obscene material is a separate offense, committed in both the jurisdiction in which it is mailed, and the jurisdictions in which it is received. And the characterization of an item as "obscene" *vel non,* for First Amendment purposes, may, indeed, vary from place to place. *Hamling, supra; Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). There is no "national standard" as to what is or is not obscene. *Miller,* 413 U.S. at 30–34, 93 S.Ct. at 2618–2620.

The Court is not persuaded, however, that successive *federal* prosecutions in obscenity cases for mailings of the same matter are consistent with the Double Jeopardy clause of the Fifth Amendment. While convictions in state courts in Maine or Mississippi may be entirely consistent, for double jeopardy purposes, with earlier acquittals in Nevada or New York, *see Miller,* 413 U.S. at 32, 93 S.Ct. at 2619, the same may not hold true for the federal judicial system. One who makes a national mailing of allegedly obscene material will presumably have to answer but once to each state sovereign for violating that state's obscenity laws. But if defendants' contention is correct, viz., that plaintiffs may be successively prosecuted by the United States in each of the 95 federal judicial districts for mailing the identical material, the rule would render the Double Jeopardy clause meaningless in obscenity cases involving mass mailings. The United States would have nearly a hundred opportunities to convince a local jury that the same sexually oriented materials are obscene, according to their contemporary community lights, and any one conviction might suffice to put the distributor out of business, if the ordeal had not already done so.

Defendants were invited by the Court to address the issue of double jeopardy in the context of multiple prosecutions for obscenity in different federal judicial districts. They have come forth with, and rely primarily upon, a single Fifth Circuit case, *United States v. Linetsky,* 533 F.2d 192 (5th Cir.1976), *reh'g denied,* 540 F.2d 1086 (1976), in which the court held that the pretrial dismissal of an obscenity indictment by a federal district judge in California, who found that the subject publications were not obscene "as a matter of law," did not preclude a subsequent federal prosecution in Florida for mailing some of the same materials. The *Linetsky* court predicated its holding on both its doubt that jeopardy had ever attached in the California proceeding, and the absence of a "factual identity" between the "overt acts" alleged and the "temporal and geographic" distinctions between the particulars of the

California case and the mailings in the convictions it was reviewing. 533 F.2d at 197. It treated the issue no further, however, and went on to consider other issues it considered more significant.

Nevertheless, as noted, defendants rely upon *Linetsky* as authority for the multiple-prosecution strategy it is alleged they intend to employ against plaintiffs. This Court remains doubtful that *Linetsky* is the dispositive pronouncement on the subject, and it is unprepared at this stage of the case to accept the proposition that the federal government can constitutionally mount successive prosecutions against the same person for publishing the same allegedly obscene material, but mailing it to different addresses, once he has been put to trial before a jury in *any* federal judicial district, and in particular if he has been once acquitted. *See Linetsky,* 533 F.2d at 197–200. *See also Serfass v. United States,* 420 U.S. 377, 388–393, 95 S.Ct. 1055, 1062–1065, 43 L.Ed.2d 265 (1975).

## II.

◼ The final two elements of plaintiffs' right to a preliminary injunction are readily apparent. Defendants object that a preliminary injunction will preclude them from proceeding against plaintiffs anywhere, "even though ... plaintiffs [may] have violated federal obscenity statutes in a variety of jurisdictions." (Defendants' Memo., p. 46). It would also interfere with the "power of the Executive Branch to exercise its prosecutorial discretion and authority." *Id.* Neither, in the Court's opinion, represents a hardship equivalent to defending against multiple felony prosecutions, commencing immediately and continuing for an indefinite future, which is what plaintiffs can, with reason, anticipate if defendants are not restrained until the merits are decided. All defendants will apparently suffer is an inconvenient delay, and some loss of tactical advantage, in launching their offensive. Plaintiffs, on the other hand,

are confronting annihilation, by attrition if not conviction.

And insofar as the public interest is concerned, it was perhaps put best by another judge of this district court, in another case growing out of defendants' efforts to suppress the dissemination of sexually oriented materials, who said, simply, "it is in the public interest to uphold a constitutionally guaranteed right." *Playboy Enterprises v. Meese,* 639 F.Supp. 581, 587 (D.D.C. 1986).

## III.

◼ The question remains, nevertheless, whether this Court has jurisdiction, in a civil action of an equitable nature filed in anticipation of an expected criminal indictment, to enjoin the prosecution which will ensue for any reason. In *Deaver v. Seymour,* 822 F.2d 66 (D.C.Cir.1987), the court of appeals for this circuit affirmed the denial of a preemptive civil injunction to block the return of a perjury indictment, notwithstanding a substantial question as to whether the prosecution could constitutionally be maintained by a special prosecutor, holding that the potential criminal defendant had an adequate remedy at law in an appeal from a final judgment of conviction.[5] 822 F.2d at 71.

Even as it did so, however, the *Deaver* court noted a well-established exception to the rule in the case of federal civil actions brought to vindicate First Amendment rights threatened by *state* criminal prosecutions. 822 F.2d at 69. And in *Juluke v. Hodel,* 811 F.2d 1553 (D.C.Cir.1987), decided shortly before *Deaver,* another panel of the D.C. Circuit held the *Younger* doctrine, and the general rule of abstention, inapplicable when injunctive relief is sought against future *federal* prosecutions for violations of federal laws alleged to be unconstitutionally restrictive of rights of expression. 811 F.2d at 1556–1558.[6]

---

**5.** In instances in which a criminal defendant contends he cannot constitutionally ever be put to trial at all, a motion to dismiss an indictment pursuant to Fed.R.Crim.P. 12(b)(1) is subject to

interlocutory review under the collateral order doctrine. 822 F.2d at 70.

**6.** *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is the seminal case holding

When a plaintiff seeks a federal civil injunction against criminal prosecutions which are allegedly motivated by bad faith, in that they are brought to suppress conduct the authorities find objectionable even if constitutionally protected, the constraints upon the jurisdiction of the civil court do not obtain, at least in the absence of a "pending" criminal prosecution. In *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the Supreme Court reversed a three-judge district court's denial of, and actually ordered it to issue, an injunction against "threatened" state prosecutions of civil rights activists under various anti-subversive activity statutes, holding that the allegations of bad faith on the part of the state officials in endeavoring, by way of criminal prosecution, to suppress constitutionally protected activities, and the attendant "chilling effect" it worked upon those activities, mandated relief without awaiting a saving decision at the conclusion of a criminal trial. In *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), a *post-Younger* case, the Supreme Court affirmed a federal injunction against repetitive state prosecutions of a New Hampshire resident who objected, on constitutional grounds, to displaying the motto embossed on his state automobile license plate. And in *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), the only *post-Younger* Supreme Court case explicitly addressing federal injunctive relief from threatened state criminal prosecutions for prohibited public displays of "sexually oriented materials," the Court affirmed a district court's injunction against as-yet-uncommenced prosecutions of the owner of a bar featuring "topless dancing" as entertainment.

Defendants contend that none of those cases is apposite; in each, they say, criminal prosecution was a hypothetical, albeit realistic, possibility. Here, there are four grand jury investigations in progress, which defendants characterize as "ongoing" prosecutions, and a court of equity, whether state or federal, may not now enjoin at this stage.

No case has, as yet, been brought to the Court's attention which establishes when a criminal prosecution "begins," for purposes of forestalling equitable intervention. But plaintiffs here have not sought to curtail the investigations into their activities, only the prosecutions which may result in more than one federal judicial district. Since felony prosecutions cannot take place before a grand jury finds probable cause to believe a crime has been committed by the one it proposes to charge, the Court concludes, for the present, that prosecutions have not commenced against these plaintiffs, and, to the extent the pendency of an actual prosecution does represent an impediment to civil injunctive relief, it is not to be found here. The Court also observes that this case seems to fall precisely within the *Younger* exception for cases in which First Amendment rights cannot be vindicated by "defense against a single criminal prosecution."

For the foregoing reasons, therefore, it is, this 8th day of June, 1988,

ORDERED, that defendants' motion for summary judgment is denied without prejudice; and it is

FURTHER ORDERED, that plaintiffs' motion for a preliminary injunction is granted in part; and it is

FURTHER ORDERED, that defendants Meese, Showers, and Christfield, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, including but not limited to defendants Ward, Whitwell, Richmond, Carpenter, Lambert, Dawson, Hockner, and Falgowski, are preliminarily restrained and enjoined from causing or permitting indictments to be returned against plaintiffs, or either of them, in more than one federal judicial district within the United States, pending

that a federal court may not enjoin "ongoing" state prosecutions alleged to inhibit the criminal defendant's rights of free speech, unless "the threat to [his] federally protected rights ... can-

not be eliminated by his defense against a single criminal prosecution." 401 U.S. at 46, 91 S.Ct. at 751.

determination of this case on the merits or further order of this Court.