**UNITED STATES of America**

v.

**Steven TOUSHIN, et al.**

**No. 3–88–00094.**

United States District Court, M.D. Tennessee, Nashville Division.

April 21, 1989.

As Amended June 14, 1989.

---

Wendy S. Goggin, Asst. U.S. Atty., Nashville, Tenn., for U.S.

David S. Rudolf and Thomas K. Maher of Beskind & Rudolf, Chapel Hill, N.C., for Corporate defendants.

Joseph B. Cheshire V, Raleigh, N.C., for Toushin.

Donald Dawson, Nashville, Tenn., for Rosen.

E.E. Edwards III, Nashville, Tenn., for O'Conner and Larsen.

## MEMORANDUM

JOHN T. NIXON, District Judge.

### I. THE FACTS

This case involves an alleged conspiracy to use the mails to promote and distribute sexually explicit materials in violation of federal obscenity and postal service laws. The United States has indicted Steve Toushin, Sean O'Conner, Randy Larsen, David Rosen, a/k/a Dave Nesor, Slave & Master Video, Inc., and Entertainment & Amusement, Inc. in the Middle District of Tennessee on charges of conspiracy to use the mails to distribute obscene material and sexually explicit advertisements, and substantive counts of using the mails to distribute obscene matter. With the exception of David Rosen, who apparently resides in New Windsor, New York, all of the defendants, including the corporate defendants, reside in the Chicago, Illinois area.

Steven Toushin operates the Bijou theater in Chicago, which opened in 1971 and is the oldest operating homosexual movie theater in the country. Entertainment and Amusement, Inc., doing business as Bijou Video Sales, has sold video tapes since 1978. Slave and Master, Inc., has been in the business of selling video tapes since 1983. The other defendants allegedly assisted Mr. Toushin in his enterprises.

In Count One, the United States has charged the defendants with knowingly entering into a conspiracy, lasting from approximately September 1, 1985 to approximately November 25, 1987. More specifically, subparagraph (a) of Count One alleges that the defendants conspired:

To knowingly use the mails for ... delivery of nonmailable matter, to wit:

The following obscene video cassette tapes:

Erotic Hands

The Final Chapter of Mistress Ann

You Said a Mouthful

Please Sir

The Government alleges that this conspiracy violates 18 U.S.C. §§ 2, 1461 (1982). Subparagraph (b) of Count One alleges that the defendants conspired:

To willfully use the mails for ... delivery of sexually oriented advertisements to persons who filed a statement with the Postal Service who desired to receive no sexually oriented advertisements through the mails and whose names and addresses were contained for more than 30 days on a list maintained by the Postal Service.

The Government alleges that this conspiracy violates 18 U.S.C. §§ 2, 1735 (1982).

18 U.S.C. § 1735 makes criminal a "willful" violation of 39 U.S.C. § 3010 (1982). 39 U.S.C. § 3010 provides, in turn, that any person may file with the Postal Service a statement they they do not wish to receive sexually oriented advertising. The Postal Service is required to maintain a list of such persons (the SOA list), and "shall make the list ... available to any person, upon such reasonable terms and conditions as it may prescribe, including the payment of such service charge as it determines to

be necessary." *Id.* § 3010(b). The service charge in 1985 was approximately $3,500, and has risen to almost $10,000 for 1988.

The usual enforcement mechanism for alleged violations of 39 U.S.C. § 3010 is for the Postal Service to request that the Attorney General institute a civil action against the sender pursuant to 39 U.S.C. § 3011. The district court, upon finding a violation of 39 U.S.C. § 3010, can issue an order requiring that the sender refrain from additional violations, or requiring that the Postmaster refuse to accept the sender's mailings. 39 U.S.C. § 3011(a).

The defendants contend that the allegations in the indictment concerning the conspiracy to violate 18 U.S.C. § 1735 relate to the mailing of a sexually oriented advertisement on November 19, 1985 to Richard Kemp, 900 Russell Street, Nashville, Tennessee.

The defendants are also charged in the conspiracy count with mailing each of the four mentioned videos to Nashville, Tennessee from Chicago, Illinois from August to November 1987, in violation of 18 U.S.C. § 371 (1982).

In the remaining four counts, the defendants are charged with willfully mailing each of the four movies in violation of 18 U.S.C. §§ 2, 1461.

Defendants have also been indicted for using the mails to deliver obscene material in the District of Utah. The charges in Utah stem from the same type of material; including some of the films that are the subject of the indictment here in this district. All of the mailings at issue occurred in 1986 and 1987, almost a year before the return of the indictments. In addition, the government has conducted an investigation in the District of Nebraska and an indictment may be forthcoming. According to the defendants, the investigation of their activities has been a coordinated effort. Indeed, the Postal Inspector in Utah provided the Postal Inspector in Tennessee with the order forms necessary for obtaining catalogues from defendants.

In this case, and in Utah, the prosecutions are based upon material that was ordered by United States Postal Inspectors for the express purpose of instigating prosecutions against defendants in these jurisdictions. There is no established evidence that the films involved in this case have ever been sent to this jurisdiction by defendants except for those copies ordered by the Government. Although defendants may not have mailed the films that are the subject of this indictment to anyone in Tennessee except the government, defendants have been mailing other films and catalogues to consenting customers in Tennessee for years.

In this proceeding, the defendants have brought over twenty pre-trial motions and the government two motions. The defendants have brought numerous motions seeking to adopt the motions of the co-defendants. The Court will allow the defendants to adopt each others motions. Hereinafter, the motions brought in defense of this prosecution shall be deemed to be brought by all the defendants.

Oral argument was held on March 17, 1989. The Court resolved the following motions at that hearing:

 1. Defendants' motion to dismiss counts charging distribution of obscene material, and

 2. Defendants' motion to suppress masters of several video tapes.

The Court reserves for further oral argument the following motions offered by defendants:

 1. Motion for order requiring the Government to designate exhibits to be offered at trial;

 2. Motion for specialized jury selection procedures;

 3. Motion to reserve the right to file additional motions;

 4. Motion to suppress;[1] and,

 5. Motion to require the Government to give notice of its intention to use certain evidence.

---

1. The Court DENIES the Government's motion to strike defendants' motion and motion to quash since defendants' motion is not duplicitous, frivolous or merely for delay.

Further oral argument pertaining to these matters shall be held on the 25th day of April, 1989, at 1 o'clock p.m.

The defendants offered several motions which will be addressed by this Memorandum and Order. They have submitted three motions regarding proper venue including:

1. Motion to transfer venue;

2. Motion to dismiss based upon vindictive multiple prosecution in violation of the First and Fifth Amendments to the United States Constitution; and

3. Motion for Discovery in support of the two above mentioned motions.

The Government has submitted a motion to quash subpoena related to the discovery motion mentioned above.

The defendants have offered the following motions pertaining to the indictment:

1. Motion for discovery related to Grand Jury defects or abuse to dismiss the indictment if such defects or abuse occurred;

2. Motion to dismiss conspiracy to violate 18 U.S.C. § 1735;

3. Motion to dismiss Count One as duplicitous;

4. Motion for a Bill of Particulars; and

5. Motion to strike prejudicial surplusage.

The defendants have submitted the following motions regarding trial procedure:

1. Motion for severance of defendants; and

2. Motion for additional peremptory challenges.

The defendants have submitted the following motions involving evidentary matters:

1. Motion for production of exculpatory material; and

2. Motion in Limine to determine admissability of co-conspirators' statements.

## II. VENUE RELATED MOTIONS

Pending before the Court are three related motions offered by defendants regarding whether this Court should exercise venue over this case. The three motions include a motion to transfer venue, a motion to dismiss based upon vindictive multiple prosecution in violation of the First and Fifth Amendments to the United States Constitution, and a motion for discovery to support the two above mentioned motions. In addition, the United States' March 15, 1989 motion to quash subpoena is pending before the Court.

### A. *Motion to Transfer Venue*

■ The defendants move this Court to transfer the above-styled case to the Northern District of Illinois pursuant to Fed.R. Crim.P. 21(b). Determination of transfer *vel non* is vested in the sound discretion of the Court. In *Platt v. Minnesota Mining Co.*, 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964), the Supreme Court approved ten factors which are pertinent in the determination of whether a case should be transferred. These include:

1) location of corporate defendant; 2) location of possible witnesses; 3) location of events likely to be in issue; 4) location of documents and records likely to be involved; 5) disruption of defendant's business unless the case is transferred; 6) expense to the parties; 7) location of counsel; 8) relative accessibility of place of trial; 9) docket condition of each district or division involved; and 10) any other special elements which might affect the transfer. *Id.* at 243–44, 84 S.Ct. at 771–72.

In determining the propriety of transfer, a court must decide which of these factors support transfer and which do not and then attempt to strike a balance among them. Factors favoring transfer include location of corporate defendants, location of possible witnesses, disruption of defendants' business, and expense of parties. A special element favoring transfer is the Government's decision to fabricate venue here by bringing defendants' catalogue into the district, and then ordering the films.

The factors favoring transfer are outweighed by the standard which must be applied in an obscenity case as delineated in *Miller v. California*, 413 U.S. 15, 93

S.Ct. 2607, 37 L.Ed.2d 419 (1973) and *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). Pursuant to these cases, a Middle Tennessee jury must apply its community standards in order to determine if the sexually explicit material in question are obscene. The Court rejects the notion advanced by defendants that a Northern Illinois jury could realistically employ the contemporary community standards of the Middle District of Tennessee. Nor should the community standards of Northern Illinois be used for an offense allegedly violating the community standards of Middle Tennessee.

The defendants submit the case of *United States v. McManus,* 535 F.2d 460 (8th Cir.1976), in which defendants, California residents charged with mailing obscene advertisements to Iowa in violation of postal statutes, unsuccessfully attempted to transfer venue from Iowa to California. The Court identifies with the reasoning of the *McManus* Court which stated:

> In addition to the specific intent demonstrated by Congress to allow the recipient district to prosecute, we are faced with the fact that by its decision in *Hamling* and *Miller,* the Supreme Court has determined that one of the constitutional standards used to determine obscenity is local rather than national in character. This requirement, coupled with the decision of the government to bring this indictment in Iowa, mandates that the obscenity *vel non* of these materials must be determined according to the Iowa contemporary community standards....

> We recognize that the practical impact of our decision is to substantially reduce the rights of defendants in a postal obscenity suit to a transfer. This appears to conflict with the amendment to Rule 21(b) in 1966 that added considerations about the convenience of the forum to parties and witnesses. However, under the circumstances of this case and in view of the recent decisions of the Supreme Court that obscenity *vel non* must be determined on a local community standard, we have no choice but to order that this case be tried in Iowa. Our opinion should not be read to say that a Rule

21(b) transfer may never be granted in an obscenity case. A stronger showing than made here, such as intentional overreaching by the government, must be made, however, to overcome the government's choice of forum in postal obscenity cases.

*Id.* at 464.

The normal rules affecting transfer under Fed.R.Crim.P. 21(b) do not apply in obscenity cases since the appropriate finder of fact is a jury selected from the community in which the offense took place. Although the Government took measures inducing the defendants to mail allegedly obscene materials to Middle Tennessee, the defendants made a deliberate decision to conduct business here. Moreover, the defendants do not have the right to choose where they are prosecuted. *Platt,* 376 U.S. at 245, 84 S.Ct. at 772. Thus, the defendants are subject to the community standards of Middle Tennessee and fall short of demonstrating intentional overreaching. For the foregoing reasons, the Court DENIES defendants' motion.

B. *Motion to Dismiss Based Upon Vindictive Multiple Prosecution in Violation of the First and Fifth Amendments to the United States Constitution*

Pursuant to Fed.R.Crim.P. 12(b), the defendants contend that simultaneous indictments in Middle Tennessee and Utah violate defendants' constitutional rights involving First Amendment, substantive due process, and double jeopardy and seek dismissal of this action.

Normally, the doctrines relating to prosecutorial vindictiveness address situations such as reindictments on more serious charges in retaliation for exercising one's constitutional rights. *See e.g. Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), *United States v. Wilson,* 639 F.2d 500 (9th Cir.1981). In *U.S. v. Meyer,* 810 F.2d 1242 (D.C.Cir.1987), the Court of Appeals for the District of Columbia explained the burdens of proof used under this doctrine:

"Prosecutorial vindictiveness" is a term of art with a precise and limited meaning. The term refers to a situation in which the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights....

The Supreme Court has established two ways in which a defendant may demonstrate prosecutorial vindictiveness. First, a defendant may show "actual vindictiveness"—that is, he may prove through objective evidence that a prosecutor acted in order to punish him for standing on his legal rights. This showing is, of course, exceedingly difficult to make. Second, a defendant may in certain circumstances rely on a presumption of vindictiveness: when the facts indicate "a realistic likelihood of 'vindictiveness,'" a presumption will arise obliging the government to come forward with objective evidence justifying the prosecutorial action. If the government produces such evidence, the defendant's only hope is to prove that the justification is pretextual and that actual vindictiveness has occurred. But if the government fails to present such evidence, the presumption stands and the court must find that the prosecutor acted vindictively.

*Id.* at 1245 (citations omitted).

### 1. First Amendment

■ The defendants argue that:

the simultaneous dual prosecution of defendants in districts far removed from their residence, and in which venue exists *only* because of the specific acts of the United States Government in ordering the films, is part of a concerted effort by the United States to force persons to cease exercising their First Amendment right to sell sexually explicit material by making the cost of engaging in such activity prohibitorily expensive and by shopping for forums that the government believes will be most inhospitable to defendants. Brief on Vindictive Prosecution for Defendants at 7.

Prosecutorial vindictiveness occurs when government action responds to the defendants' prior exercise of constitutional or statutory rights. *United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). *Meyer*, 810 F.2d at 1245. The *Meyer* court stated that "a prosecutorial action is 'vindictive' only if designed to penalize a defendant for invoking legally protected rights." *Id.*

Here, the defendants have failed to establish "actual vindictiveness" or a "realistic likelihood of vindictiveness" pursuant to *Meyer* for their First Amendment argument. They have failed to show that the Government's prosecution of the films in question is designed to penalize speech protected by the First Amendment. The Court recognizes that the films are presumed to be protected by the First Amendment, but holds that a jury could reasonably find that the films in question are obscene under local community standards, thus, removing the prospect of a vindictive prosecution penalizing the use of First Amendment rights. For defendants' summary of the four videotapes see Defendants' Motion for Specialized Jury Selection Procedures Exhibit A, Review and Commentary on Videotapes Indicted in Tennessee. The Court cannot dismiss the prosecution for vindictiveness when the Government carefully selected for prosecution sexually explicit material that a reasonable jury could determine to be obscene and therefore outside the protection of the First Amendment. For the foregoing reasons, the Court DENIES this aspect of defendants' motion.

### 2. Substantive Due Process

■ The defendants argue that "the government has embarked on a systematic program to drive nationwide distributors of sexually explicit material out of business by subjecting them to a series of prosecutions, in widely separated districts far from the home of the distributor." Brief on Vindictive Prosecution for Defendants at 19. Defendants' argument that the government's action prevents them from pursuing their chosen vocation only begs the question of whether or not such occupation is lawful. Judge Jackson in *Freed-*

*burg v. United States Dep't of Justice,* 703 F.Supp. 107, 110 (D.D.C.1988) explained that "[t]here is no right, constitutional or otherwise, to pursue an unlawful occupation (e.g., purveying contraband, whether narcotics, worthless stock, or obscenity), and the Court assumes that the Government would be entirely within its rights to put such a tradesman out of business." For the foregoing reasons, the Court DENIES this aspect of defendants' motion.

### 3. Double Jeopardy

The defendants argue that multiple prosecutions for sending the same films to postal inspectors in different districts violates the Double Jeopardy Clause of the Fifth Amendment. The defendants rely on *Freedburg v. United States Dep't of Justice,* 703 F.Supp. 107 (D.D.C.1988) in which plaintiffs, who engaged in a mail order business promoting and selling sexually oriented materials, sought to enjoin the federal government from prosecuting them in more than one federal judicial district. Defendants moved for summary judgment which the Court denied. Based on the double jeopardy clause, the Court granted plaintiffs' motion for a preliminary injunction preventing the federal government from prosecuting the plaintiffs in more than one federal jurisdiction.

The *Freedburg* Court stated:

[I]t is not persuaded, however, that successive *federal* prosecutions in obscenity cases for mailing the same matter are consistent with the Double Jeopardy clause of the Fifth Amendment. While convictions in state courts in Maine or Mississippi may be entirely consistent, for double jeopardy purposes, with earlier acquittals in Nevada or New York, *see Miller[ v. California],* 413 U.S. at 32 [93 S.Ct. at 2619], the same may not hold true for the federal judicial system. One who makes a national mailing of allegedly obscene material will presumably have to answer but once to each state sovereign for violating that state's obscenity laws. But if defendants' contention is correct, viz., that plaintiffs may be successively prosecuted by the United States in each of the 95 federal judicial

districts for mailing the identical material, the rule would render the Double Jeopardy clause meaningless in obscenity cases involving mass mailings. The United States would have nearly a hundred opportunities to convince a local jury that the same sexually oriented materials are obscene, according to their contemporary community lights [sic], and any one conviction might suffice to put the distributor out of business, if the ordeal had not already done so.

*Id.* 703 F.Supp. at 110.

The Government in the *Freedburg* case and in this case rely primarily upon *United States v. Linetsky,* 533 F.2d 192 (5th Cir. 1976), *reh'g denied,* 540 F.2d 1086 (5th Cir.1976), in which the Fifth Circuit held that the pretrial dismissal of an obscenity indictment by a federal district judge in California, who found that the materials in question were not obscene "as a matter of law," did not prevent a subsequent federal prosecution in Florida for mailing some of the same materials. The *Freedburg* Court viewed the *Linetsky* treatment of the double jeopardy question as essentially dicta and declared it "remains doubtful that *Linetsky* is the depositive pronouncement on the subject." *Freedburg,* 703 F.Supp. at 111.

Even if the *Linetsky* treatment of the double jeopardy was dicta, this Court respectfully disagrees with the analysis of the *Freedburg* Court and holds that the reasoning of *Linetsky* controls. First, it is premature to apply the double jeopardy clause until the defendants have been put to trial before a trier of fact. *Linetsky,* 533 F.2d at 197.

Secondly, the Court holds that the defendants here are not being subjected to multiple prosecution for the same offense. The *Linetsky* Court explained that "[t]o support a claim of double jeopardy, however, it must be shown that the two offenses charged are in law and in fact the same offense." *Id.*

As was the case in *Linetsky,* this Court finds that factual identity regarding overt acts does not exist when multiple indict-

ments "involve not only different addresses but also mailings which are temporally and geographically distinct" even if the indictments "are rooted in the same statutory provisions, charge the same substantive violation, and involve mailings of the same allegedly obscene material." *Id.* For the foregoing reasons, the Court DENIES defendants' motion pertaining to the Double Jeopardy Clause of the Fifth Amendment.

C. *Defendants' Motion for Discovery in Support of Motion to Dismiss for Vindictive Multiple Prosecution and Motion for Change of Venue and Government's Motion to Quash Subpoena*

The defendants move this Court for an Order requiring the Government to provide the defendants materials in an attempt to support their two venue related motions discussed above. Since such motions have been denied, the Court has no reason to prolong this matter with unnecessary discovery. Thus, defendants' motion for discovery to support their venue related motions is DENIED. Consequently, the Government's motion to quash subpoena filed on March 15, 1989, is GRANTED.

D. *Prosecutorial Discretion*

As the above discussion indicates, the Court finds that the federal government, pursuant to *Miller* and its progeny, has the authority to prosecute the defendants in more than one federal judicial district for violating the federal obscenity laws. Though the government has the authority to prosecute the defendants in Middle Tennessee while prosecuting them for different, but similar offenses in Utah and possibly Nebraska, the Court is distressed that the government has made that decision when prosecutorial discretion should dictate otherwise.

Prosecuting defendants in different districts for similar, but factually discrete offenses creates at least an appearance of unfairness and unnecessarily burdens the Federal Courts. Prosecuting defendants in Middle Tennessee, without evidence of a significant number of complaints about de-

fendants' actions by citizens of this district is particularly inappropriate. Though the Court cannot in good conscience dismiss this case for improper venue, the Court doubts that the prosecution used good judgment by pursuing multiple prosecutions, and by choosing Middle Tennessee as a forum.

III. INDICTMENT RELATED MOTIONS

Pending before the Court are five motions submitted by the defendants which involve issues pertaining to their indictment. They include a motion for discovery related to grand jury defects or abuse and to dismiss the indictment if such defects or abuse occurred, a motion to dismiss conspiracy to violate 18 U.S.C. § 1735, a motion to dismiss Count One as duplicitous, a motion for a Bill of Particulars, and a motion to strike prejudicial surplusage.

A. *Motion for Discovery of Grand Jury Defects or Abuse and to Dismiss the Indictment if such Occurred*

The defendants move the Court for an order requiring the government to disclose whether the entire video of each indicted film was shown to the grand jury, whether any juror indicated they could not impartially view such videos as a whole, whether any of the grand jurors who voted to indict the specific videos in question missed all or part of the viewing of such videos, and whether the indicting grand jury was fully instructed on the pertinent obscenity laws.

Ordinarily, a long-established policy of secrecy surrounds grand jury proceedings and this policy can be overcome by the defendant only by a showing of particularized need which outweighs the policy of secrecy. *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *United States v. Benton,* 637 F.2d 1052 (5th Cir.1981). The *Douglas Oil* Court articulated the rationale for protecting grand jury secrecy:

First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come for-

ward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil,* 441 U.S. at 219, 99 S.Ct. at 1673.

The Sixth Circuit has said "[t]here is a presumption of regularity which attaches to such [grand jury] proceedings and the defendants have a difficult burden to prove any irregularity." *United States v. Battista,* 646 F.2d 237, 242 (6th Cir.1981), *cert denied,* 454 U.S. 1046, 102 S.Ct. 586, 70 L.Ed.2d 488 (1981). The speculative assertions of improprieties in the grand jury proceedings fall short of the particular need required to outweigh the policy of grand jury secrecy. *United States v. Ferreboeuf,* 632 F.2d 832 (9th Cir.1980).

The *Douglas Oil* Court explained that the burden on the defendants lessens as the relevancy of the rationale is weakened. The Court stated, "[i]t is equally clear that as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Douglas Oil,* 441 U.S. at 223, 99 S.Ct. at 1675. Federal Courts have dismissed a number of indictments when prosecutorial abuse has been shown. *See, e.g., United States v. Samango,* 607 F.2d 877 (9th Cir. 1979).

This case involves an indictment for a distributor of videos which are presumptively protected by the First Amendment. Under *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973), each of the videos would be obscene, and thus outside the protection of the First Amendment and potentially giving rise to

criminal liability, if the material, *taken as a whole,* appeals to a prurient interest in sex, depicts in a patently offensive way sexual conduct and lacks serious literary, artistic, political or scientific value.

The Court ORDERS the Government to provide the Court by April 25th, at 9:00 A.M. with the pertinent excerpts of the grand jury proceedings for an *in camera* inspection to establish that the prosecution did not mislead the grand jury members with selected excerpts of any of the indicted films and that a sufficient number of grand jurors witnessed the films to properly indict the defendants in compliance with the spirit of *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). As to the latter part, the Court wishes to ensure that even if grand jurors absent during a significant part of such films were disqualified that the prosecution would have the requisite number of grand jurors for a proper indictment.

After reviewing the case law and the briefs of the parties, the Court has reached the conclusion that obscenity defendants must be afforded this limited protection. In an obscenity case, the defendants have a particular need to be ensured that the grand jurors evaluated the materials as a whole. The policy concerns outlined by the *Douglas Oil* Court do not extend to this limited *in camera* disclosure to ensure that the videos were evaluated in a manner consistent with *Miller.* The Court's ruling does not lift the cloak of grand jury secrecy since the review shall be *in camera.* The Court recognizes that the defendants have not presented hard facts as a basis of concern, but notes grand jury secrecy prevents such knowledge. Because of the particular needs of obscenity defendants and that the considerations justifying secrecy carry little weight in this context, the Court takes this prudent course.

The Court does not wish to open the door to unnecessary interference with the Government's effective handling of grand jury proceedings. The Court's decision extends only to the obscenity area. The Court DENIES defendants' other requests in this motion.

B. *Motions to Dismiss Conspiracy to Violate 18 U.S.C. § 1735 and to Dismiss Count One as Duplicitous*

Pending before the Court are defendants' motion to dismiss conspiracy to violate 18 U.S.C. § 1735 and motion to dismiss Count One as duplicitous. Count One of the indictment charges defendants with a conspiracy to violate both 18 U.S.C. § 1461 and 18 U.S.C. § 1735.

■ The indictment alleges that defendants specifically and willfully agreed to mail sexually oriented advertising to persons who had requested that they not receive such material. In order to rebut this allegation, defendants attempt to demonstrate that they took all reasonable steps to avoid sending sexually oriented advertising to persons who had requested that they not receive this material, and that any violation of 39 U.S.C. § 3010 was not willful. Defendants contend that, the lapse of three years between the mailing and the indictment, severely handicaps their ability to show that:

"(a) They distribute material of interest primarily to gay males, and send advertisements only to that population. Specifically, defendants only obtain names to add to their mailing lists from companies that sell similar material.

(b) Defendants always obtained Richard Kemp's name from a company distributing similar material, and reasonably believed that he wished to receive the material.

(c) Defendants always clearly identified the sexually explicit nature of the material on the outside of an inner envelope, which in turn must be opened to view the advertisements.

(d) Upon the receipt of a prohibitory order, such as that received from Richard Kemp, defendants immediately removed the addressee's name from their mailing list.

(e) Upon occasion, a bulk mailing would have been placed in the mail prior to the receipt of the prohibitory order, but would not be delivered to the addressee until some time after the delivery of the prohibitory order. The flyer received by Mr. Kemp was part of such a bulk mailing, and was mailed before Mr. Kemp's name had been on the SOA list for thirty days."

Brief of Defendants to Dismiss 18 U.S.C. § 1735 Charge at 4.

The defendants argue that the delay between the alleged mailing and the return of the indictment prejudiced the case in violation of due process, requiring dismissal of the allegations related to the mailing.

A due process claim becomes concrete and ripe for adjudication only upon proof of actual prejudice. *United States v. Marion,* 404 U.S. 307, 326, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971); *United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). The *Lovasco* Court added that "proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." 431 U.S. at 790, 97 S.Ct. at 2049.

The *Lovasco* Court articulated the limited scope of this judicial inquiry:

the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." Our task is more circumscribed. We are to determine only whether the action complained of—here, compelling respondent to stand trial after the Government delayed indictment to investigate further—violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," and which define "the community's sense of fair play and decency."

*Id.* (citations omitted).

The *Lovasco* Court distinguished between investigative delay and delay due to the prosecution's attempt to "gain tactical advantage over the accused." *Id.* 97 S.Ct.

at 2051 (citing *Marion,* 404 U.S. at 324, 92 S.Ct. at 465). The Court held that investigative delay does not deprive a defendant of due process "even if his defense might have been somewhat prejudiced by the lapse of time." *Id.* 97 S.Ct. at 2052.

The defendants concede that the decision to delay was not to gain tactical advantage. The Court holds that the decision to delay was not devised to gain tactical advantage, but rather reflected indifference to the alleged violation of § 1735 prior to the emergence of the alleged § 1461 violation. The Court shall treat the delay as an "investigative delay."

The Court holds that the three year delay somewhat prejudices the defendants, but does not violate "fundamental conceptions of justice." Pursuant to the *Lovasco* holding, the Court questions the prosecution's judgment to add on an alleged § 1735 violation to the more central alleged § 1461 violations, but shall not impose its "personal and private notions of fairness" on the prosecution. For the foregoing reasons, the Court DENIES defendants' motion.

■ The defendants contend that 18 U.S.C. § 1735 violates the First Amendment and the Equal Protection Clause of the Fifth Amendment due to the fee required under 39 U.S.C. § 3010 to obtain the list of those who registered with the Postal Service to stop receiving sexually oriented advertising. (18 U.S.C. § 1735 makes criminal a willful violation of 39 U.S.C. § 3010). The Court DENIES defendants' motion pursuant to *Pent–R–Books, Inc. v. United States Postal Service,* 328 F.Supp. 297 (E.D.N.Y.1971).

■ The defendants seek to dismiss Count One, which alleges violations of both 18 U.S.C. § 1461 and 18 U.S.C. § 1735, as duplicitous. The defendants argue that 18 U.S.C. § 1461 and 18 U.S.C. § 1735 involve distinct crimes and very different types of harm. For example, § 1461 addresses only the mailing of "obscene" material while § 1735 concerns the much broader "sexually oriented advertisement."

The prosecution may charge as a single count a conspiracy to violate separate offenses or statutes, but may not charge two separate, even related conspiracies in a single count. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Braverman v. United States,* 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942). A conspiracy count can have more than one objective and allege only a single crime of conspiracy. *United States v. Alvarez,* 735 F.2d 461, 465 (11th Cir.1984). The standard for determining the existence of a single conspiracy with separate acts at separate times as opposed to separate conspiracies "is whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy." *United States v. Jabara,* 618 F.2d 1319, 1327 (9th Cir.), *cert. denied,* 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 70 (1980), *rev'd on other grounds, United States v. De-Bright,* 730 F.2d 1255 (9th Cir.1984).

The Sixth Circuit has set forth the standards to be used for determining the existence of a single conspiracy. In *United States v. Warner,* 690 F.2d 545 (6th Cir. 1982), the Court stated:

> In determining whether the evidence showed single or multiple conspiracies, we must bear in mind that the essence of the crime of conspiracy is agreement. "[I]n order to prove a single conspiracy, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." However, the government is not required to prove an actual agreement among the various conspirators in order to establish a single conspiracy.... Accordingly, a single conspiracy does not become multiple conspiracies simply because each member of the conspiracy did not know every other member, or because each member did not know of or become involved in all of the activities in furtherance of the conspiracy. *Id.* at 548–49 (citations omitted). *See also United States v. Rios,* 842 F.2d 868, 872 (6th Cir.1988).

The Government properly charges defendants with involvement in an operation to

promote and distribute sexually explicit allegedly obscene video cassette tapes using the mails. The common goal was the promotion and distribution of these materials, making for one overall agreement to carry out that objective. Differences in time, personnel, and offenses, highlighted by the defendants are not determinative. The Court holds that Count One charging defendants with a single conspiracy which violates two offenses is not duplicitous. Thus, the Court DENIES defendants' motion.

### C. *Motions for a Bill of Particulars*

Pending before the Court are defendants' motions for a Bill of Particulars. Having reviewed the briefs and the indictment filed in this case, the Court hereby GRANTS defendants' motions with respect to the following items:

1. The names of any video tape cassettes allegedly distributed by defendants as part of the conspiracy, as alleged in Count One, Objects of the Conspiracy, paragraph 1, other than the four specifically named in the indictment, which the government will allege or attempt to prove are "obscene."

2. A description, copy, or some form of identification of all sexually oriented advertisements allegedly distributed to persons referred to in Count One paragraph B.

3. The "name of the person in Nashville, Tennessee" referred to in Overt Acts 1 and 2. The court DENIES defendants' motions with respect to the remaining items.

### D. *Motion to Strike Prejudicial Surplusage from the Indictment*

Pending before the Court is defendants' motion to strike as prejudicial surplusage Overt Act 1 of Count One. The Court will refrain from deleting all of Overt Act 1 since that would alter the indictment unnecessarily. However, pursuant to Fed.R. Crim.P. 7(d), the Court ORDERS the Government to delete the word "obscene" from Overt Act 1. Since none of the films in the sexually explicit advertisement mailed on September 9, 1985, are alleged to be obscene, the use of the word "obscene" in Overt Act 1 is immaterial, prejudicial and unnecessary.

### IV. TRIAL PROCEDURE MOTIONS

Pending before the Court are two motions submitted by defendants which involve trial procedure: a motion for severance of defendants, and a motion for additional peremptory challenges. The Court reserves judgment on the severance motion since the defendants have not submitted enough evidence to warrant concern that the defendants have been improperly or prejudicially joined. The Court GRANTS defendants' motion for additional peremptory challenges. Thus, the Court permits one additional challenge per defendant.

### V. EVIDENTIARY RELATED MOTIONS

Pending before the Court are two evidentiary related motions submitted by the defendants: a motion in limine to determine admissibility of co-conspirators' statements and a motion for production of exculpatory material. Pursuant to *United States v. Vinson*, 606 F.2d 149, 153 (6th Cir.1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980), the Court shall admit Fed.R.Evid. 801(d)(2)(E) co-conspirator statements at trial subject to demonstration of their admissibility by a preponderance of the evidence. The Court can make a determination at the appropriate time during the Government's proof.

Having reviewed the briefs and having heard oral argument, the Court finds no reason at this time to disturb the Government's promise to follow the standing discovery order and to provide exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), no later than the day before trial in this case. The Court expects the Government to provide particular exculpatory material requiring significant investigation earlier than the day before trial.

## SUMMARY

The Court has reserved for oral argument defendants' motion for an order requiring the Government to designate exhibits to be offered at trial, motion for specialized jury selection procedures, motion to reserve the right to file additional motions, motion to suppress, and motion to require the Government to give notice of its intention to use certain evidence. The hearing shall be held on April 25th, at 1 o'clock p.m. The Court consequently DENIES the Government's motion to strike defendants' motion and motion to quash.

The Court DENIES defendants' motion to transfer venue, motion to dismiss based upon vindictive multiple prosecution in violation of the First and Fifth Amendments to the United States Constitution, and motion for discovery in support of the two above mentioned motions. Consequently, the Court GRANTS the Government's motion to quash the subpoena related to the discovery mentioned above.

The Court GRANTS in part and DENIES in part defendants' motion for discovery related to Grand Jury defects or abuse to dismiss the indictment if such defects or abuse occurred, motion for a Bill of Particulars, and a motion to strike prejudicial surplusage. The Court ORDERS the Government to supply the Court by April 25th, at 9:00 a.m. selected aspects of the Grand Jury proceedings. The Court ORDERS the Government to supplement and modify the indictment as described in pages 25 and 26 of this Memorandum. The Court DENIES defendants' motion to dismiss conspiracy to violate 18 U.S.C. § 1735 and motion to dismiss Count One as duplicitous.

The Court reserves judgment on defendants' motion for severance and GRANTS defendants' motion for additional peremptory challenges. The Court permits one additional challenge per defendant.

The Court refrains from disturbing the Governments' position regarding exculpatory material. Moreover, the Court shall admit co-conspirator statements at trial subject to demonstration of their admissability by a preponderance of the evidence.

An Order will be entered in accordance with the reasoning set forth in this Memorandum.